530 F.2d 896, 910, 208 Ct.Cl. 871, 894, 185 USPQ 156, 167 (1976).

## CONCLUSION

The judgment of the Claims Court dismissing the complaint is affirmed.

AFFIRMED.

**AFRO–LECON, INC., Appellant,**

v.

**The UNITED STATES, Appellee.**

**Appeal No. 86–1726.**

United States Court of Appeals, Federal Circuit.

May 28, 1987.

G. Lindsay Simmons and Scott W. Woehr, of Cotten, Day & Doyle, of Washington, D.C., submitted for appellant.

Helene M. Goldberg, Commercial Litigation Branch, Dept. of Justice, of Washington, D.C., argued for appellee. On the brief for appellee were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Asst. Director. Also on the brief was Anthony Washington, Gen. Service Admin., of counsel.

Before NIES, Circuit Judge, NICHOLS, Senior Circuit Judge, and BISSELL, Circuit Judge.

NICHOLS, Senior Circuit Judge.

Afro-Lecon, Inc. (Afro-Lecon) appeals the final decision of the General Services Administration Board of Contract Appeals (board), GSBCA No. 7508, 86–1 BCA (CCH) ¶ 18,716, denying Afro-Lecon's motion to stay proceedings in its civil action relating to United States contract No. SB2–10–8(a)80C–045 until after the completion of related criminal proceedings against Afro-Lecon and dismissing the civil claim with prejudice. We vacate and remand.

*Background*

The Small Business Administration awarded a subcontract to Afro-Lecon on February 29, 1980, to supply 18,298 filing cabinets for the General Services Administration (GSA). After disputes developed concerning the contract, the parties entered into a settlement agreement in October 1982 that terminated the contract without termination costs and preserved Afro-Le-

con's right to assert claims concerning the delivered portion of the contract.

On June 8, 1983, Afro-Lecon submitted a certified claim, pursuant to this agreement, for costs through October 12, 1982. The basis of the claim was that the GSA delayed issuing purchase orders and bills of lading thereby increasing the company's costs. The contracting officer denied the claim on April 11, 1984, and Afro-Lecon appealed to the board.

The GSA, in preparation of its case before the board, requested discovery of the dates of the delay periods, the costs incurred during these periods, and the causal relationship between the government's actions and the claimed costs. Afro-Lecon did not respond to the satisfaction of the GSA. The GSA then issued a second set of interrogatories and a second document request. Afro-Lecon objected to the second discovery request and the agency then filed a motion to compel discovery, which the board granted on May 9, 1985. The responses provided by Afro-Lecon continued to be unacceptable to the GSA. On July 3, 1985, the board issued an order on accounting, which required Afro-Lecon to provide a detailed account of its claim with a response due by September 4, 1985.

In late July 1985, Afro-Lecon learned that it was the subject of a grand jury investigation regarding the civil claims before the board. On September 4, 1985, Afro-Lecon moved to suspend the civil proceedings because key witnesses such as officers, former employees, and consultants, were advised by counsel not to participate in the response to the order on accounting or in any portion of the civil litigation in order to avoid incrimination in the criminal proceedings. On October 17, 1985, the Assistant U.S. Attorney for the Western District of New York notified Afro-Lecon that the company and its president, Benjamin Okumabua, were potential defendants in a grand jury investigation into whether the company's claims were false, in violation of 18 U.S.C. §§ 641 and 1001.

On January 17, 1986, the board denied Afro-Lecon's September 4 motion for a stay of the civil appeal and required the company to respond to the order on accounting by February 18, 1986. In early February the grand jury, empaneled in the United States District Court for the Western District of New York, indicted Afro-Lecon and Okumabua for making false claims against the government. On February 15, 1986, Afro-Lecon renewed its motion to stay the civil proceedings in view of the indictment. The board denied the stay and dismissed the company's civil appeal on April 11, 1986. The board, in reaching this conclusion, noted that the refusal of crucial Afro-Lecon witnesses to testify made it impossible for Afro-Lecon to comply with the order on accounting. The board decided, however, that Afro-Lecon, as the party asserting the civil claim, could not use the fifth amendment as a basis to defer civil proceedings.

Before the present appeal of the board's final decision, Afro-Lecon filed a motion in the criminal case to suppress information gathered for the criminal trial through the participation of criminal investigators posing as persons concerned with the civil case and attending various civil discovery meetings. Afro-Lecon also challenged the seizure through civil discovery of twenty-five cartons of relevant records that were then given to the United States Attorney's Office. The motion to suppress has been granted in part and denied in part. *United States v. Okwumabua and Afro-Lecon, Inc.*, No. CR–86–28E (W.D.N.Y. Dec. 26, 1986). According to the government, a criminal trial has not yet taken place in this case.

## Analysis

■ The question in this case is whether the board properly denied Afro-Lecon's motion to stay the company's civil claim until completion of the criminal trial which concerned the same facts. This turns on whether the board has a right and duty to proceed in these circumstances and whether Afro-Lecon can maintain its civil suit and, at the same time, claim the fifth amendment privilege against self-incrimination. While our review of the decision of

the board does not permit reconsideration of the facts *de novo,* the board's conclusions of law are not binding on this court. 41 U.S.C. § 609(b); *American Electronic Laboratories, Inc. v. United States,* 774 F.2d 1110, 1112 (Fed.Cir.1985). We conclude that the board, in the exercise of its undoubted discretion, was mistaken in its analysis of the applicable legal standards in this case, and to Afro-Lecon's prejudice. We vacate and remand for additional proceedings consistent with this opinion.

I

Although the fifth amendment claims per se are not, as we shall show, the only consideration in the analysis of the propriety of parallel proceedings, we address the fifth amendment claims first in view of the emphasis placed on the fifth amendment claims by the parties and the board.

The fifth amendment provides that "[n]o person \* \* \* shall be compelled in any criminal case to be a witness against himself \* \* \*". U.S. Const. amend. V. The board, citing *United States v. Rylander,* 460 U.S. 752, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983) and *Smith v. Black Panther Party,* 458 U.S. 1118, 102 S.Ct. 3505, 73 L.Ed.2d 1381 (1982), *vacating* 661 F.2d 1243 (D.C. Cir.1981), concluded that in a civil suit, a party placing facts in issue may not rely upon the fifth amendment to avoid disclosure of such facts and still maintain the suit. While noting the summary nature of the reversal by the Supreme Court in *Black Panther,* the board concluded that the Court "must" have held that there are no circumstances to justify suspension of a civil case involving the same facts as a parallel criminal case when the party making the motion is a private party and the party placing facts in issue. The board also read *Rylander* to require the dismissal, rather than suspension, of a civil case where the plaintiff, in this case the appellant, refuses to answer interrogatories. We disagree that *Black Panther* compels the conclusion the board attributes to it and also conclude that *Rylander* was applied incorrectly.

In *Black Panther,* the D.C. Circuit reviewed the dismissal below of civil actions brought against the government and some of its officials by the once controversial Black Panther Party and many of its members. The Panthers sought declaratory and injunctive relief, alleging an unlawful and continuing conspiracy to destroy the Black Panther Party. Judge Skelly Wright, writing for the court, found many grounds for reversal, including an insufficient analysis of the claim to first amendment privilege to freedom of association, insufficiently responsive answers to interrogatories, unlawful demands that officers themselves respond to questions, an insufficient analysis of the assertion of the fifth amendment claim against self-incrimination, and insufficient explanation of the dismissal of a portion of the plaintiffs. *Black Panther Party,* 661 F.2d at 1256–1280, *vacated,* 458 U.S. 1118, 102 S.Ct. 3505, 73 L.Ed.2d 1381 (1982). Judge Wright's opinion has many holdings and, therefore, many possible meanings. We also note that neither the district court nor the court of appeals conclusively found that Newton was subject to pending criminal charges or that he asserted a valid claim of fifth amendment privilege. Although Judge Wright cited Newton's assertion that he was subject to criminal proceedings, the government disputed this fact and suggested that Newton's claims involved "imaginary" hazards of incrimination. *Id.* at 1270 n. 157, 1273.

The Supreme Court, in its brief order vacating the decision in *Black Panther,* provided no indication of which of the various holdings by the court of appeals was incorrect. *Smith v. Black Panther Party,* 458 U.S. 1118, 102 S.Ct. 3505, 73 L.Ed.2d 1381 (1982), *vacating* 661 F.2d 1243 (D.C. Cir.1981). It is therefore strained, without further guidance, to draw a very specific holding from the Court's opinion that extends beyond the case itself. In addition, as noted, the threshold analysis of the fifth amendment claim—the existence of a valid claim of self-incrimination—remained in dispute. We therefore decline to accept the interpretation of *Black Panther* as suggested by the board.

The second case relied on by the board, *Rylander*, did not concern the issue of parallel criminal and civil proceedings. The Court in *Rylander* considered the evidentiary effect of a fifth amendment claim and concluded that the fifth amendment does not excuse a claimant from meeting the appropriate burden of proof in his case. *Rylander*, 460 U.S. at 758, 103 S.Ct. at 1553. In the case at bar, Afro-Lecon recognizes that it is not possible to establish its civil case without producing the appropriate evidence and, therefore, requests only a stay of the civil proceedings. It does not ask to be excused from producing evidence before it can recover.

The board's scenario of the appellant waving its sword, the contract claim, over the government's head, while unfairly invoking the privilege against self-incrimination to deny the government access to evidence essential as its shield, is overstrained. In the first place, the government already has the evidence it improperly seized for the criminal trial. In the second place, the government has the money in dispute, which it retains while the stay, if granted, lasts. In the third place, a proceeding in a board of contract appeals is not precisely a combat arena. It is a mode of dispute resolution resorted to by election of the parties in a tribunal which is part of the government's own executive branch. The appellant is not necessarily waving the sword because the government may be seeking money from the appellant, not the other way around. If an appellant seeking money is willing to await the outcome of the criminal trial, the board does not point out how the government is prejudiced by delay. It is the government which wishes to deny the mode of dispute resolution it has contracted for, as a price for asserting a constitutional right.

## II

■ We now consider the appropriate standards for determining whether a stay of the civil proceedings should have been granted in this case. The Constitution does not require a stay of civil proceedings pending the outcome of criminal proceedings.

*Securities and Exchange Commission v. Dresser Industries, Inc.*, 628 F.2d 1368, 1375 (D.C.Cir.), *cert. denied*, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980). A court, however, has the discretion to stay civil proceedings, postpone civil discovery, or impose protective orders and conditions " 'when the interests of justice seem[ ] to require such action, sometimes at the request of the prosecution, * * * sometimes at the request of the defense[.]' " *Id.* (quoting *United States v. Kordel*, 397 U.S. 1, 12 n. 27, 90 S.Ct. 763, 770, n. 27, 25 L.Ed.2d 1 (1970) (citations omitted)). *Accord Standard Sanitary Manufacturing Co. v. United States*, 226 U.S. 20, 52, 33 S.Ct. 9, 16, 57 L.Ed. 107 (1912). *See also Landis v. North American Co.*, 299 U.S. 248, 254–55, 57 S.Ct. 163, 165–66, 81 L.Ed. 153 (1936) (decision to stay parallel proceeding "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance") (citations omitted).

■ The court in *Dresser* assessed the *Kordel* opinion and noted that the circumstances that weigh in favor of granting a stay include malicious prosecution, the absence of counsel for defendant during depositions, agency bad faith, malicious government tactics, and "other special circumstances." *Dresser*, 628 F.2d at 1375 (citing *Kordel*, 397 U.S. at 11–12, 90 S.Ct. at 770). The court in *Dresser* interpreted these references in *Kordel* as requiring the court to make a case-by-case determination of whether to grant a stay of civil proceedings. *Dresser*, 628 F.2d at 1375. *Accord Attorney General of the United States v. Irish People, Inc.*, 684 F.2d 928, 953 (D.C. Cir.1982) (noting and employing precedent that "balancing of the parties' interests is required * * * efforts at accommodation of both sides must be made") (citations omitted), *cert. denied*, 459 U.S. 1172, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983). We agree with this flexible approach, and believe it is particularly appropriate where constitutional rights are in issue.

The court in *Dresser* outlined the circumstances of parallel proceedings in clear terms:

Other than where there is specific evidence of agency bad faith or malicious governmental tactics, the strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter. The noncriminal proceeding, if not deferred, might undermine the party's Fifth Amendment privilege against self-incrimination, expand rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), expose the basis of the defense to the prosecution in advance of criminal trial, or otherwise prejudice the case. If delay of the noncriminal proceeding would not seriously injure the public interest, a court may be justified in deferring it.

*Id.* at 1375–76 (citations omitted).

We agree with the court's assessment in *Dresser* that parallel proceedings may result in the abuse of discovery. We discuss, *infra,* the question of whether the position of the claimant, *e.g.,* as plaintiff or defendant, is relevant. Although the government does not concede that discovery abuse is a concern in this case, it does admit on appeal that the evaluation of the motion to stay is multifaceted and not limited to the narrow issue of whether a corporation has a fifth amendment right.

The scope of civil discovery is broad and requires nearly total mutual disclosure of each party's evidence prior to trial. *Hickman v. Taylor,* 329 U.S. 495, 507, 67 S.Ct. 385, 391, 91 L.Ed. 451 (1947). Rule 26 broadly authorizes discovery of "any matter, not privileged, which is relevant to the subject matter involved in the pending action[.]" Fed.R.Civ.P. 26(b)(1). The information sought during discovery in a civil case need not be admissible at trial and need only be reasonably calculated to lead to discovery of admissible evidence. *Id.*

Criminal "discovery" under the federal rules, in contrast, is highly restricted. *See* Note, *Federal Discovery in Concurrent Criminal and Civil Proceedings,* 52 Tulane L.Rev. 769–92 (1978) (comparing discovery in criminal and civil settings). For example, Rule 15 controls the deposition process and permits a party to an action to depose only its own witnesses and then only pursuant to a court order in "exceptional circumstances." Fed.R.Crim.P. 15(a). The civil rules, in contrast, allow depositions of all parties to the action and any other person necessary to obtain testimony relevant to the subject matter of the action. Fed.R.Civ.P. 26. Rule 15 also provides that the defendant cannot be deposed without his consent and that the scope of cross-examination must be the same as at trial. Fed.R.Crim.P. 15(d). Rule 16 also significantly restricts discovery in criminal cases by describing what is discoverable with specificity and detail.

The broad scope of civil discovery may present to both the prosecution, and at times the criminal defendant, an irresistible temptation to use that discovery to one's advantage in the criminal case. Such unconstitutional uses may begin with the surreptitious planting of criminal investigators in civil depositions, as in the case at bar, and end with passive abuses, such as when the civil party, who asserts fifth amendment rights, is compelled to refuse to answer questions individually, revealing his weak points to the criminal prosecutor. This point-by-point review of the civil case may lead to a "link in the chain of evidence" that unconstitutionally contributes to the defendant's conviction. *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951).

In *Peden v. United States,* 512 F.2d 1099 (Ct.Cl.1975), the court noted the dangers of parallel proceedings in a civil service action where the same circumstances were subject to both civil and criminal proceedings:

[A] CSC [Civil Service Commission] hearing that is in the nature of a dress rehearsal for a criminal trial, in which all the Government witnesses testify and are cross-examined at length, but the defendant to be does not, is potentially a big lift to the criminal defense and could well be decisive in securing an acquittal, if anything could.

*Id.* at 1104.

The court noted the remedy for the problem presented by this situation:

[I]t has long been the practice to "freeze" civil proceedings when a criminal prosecution involving the same facts is warming up or under way. In the context of appeals from civil service adverse actions, we have repeatedly approved this practice.

*Id.* at 1103 (citations omitted).

*Accord Polcover v. Secretary of Treasury,* 477 F.2d 1223 (D.C.Cir.), *cert. denied,* 414 U.S. 1001, 94 S.Ct. 356, 38 L.Ed.2d 237 (1973). The court in *Peden* suggested that postponement of civil proceedings is desirable not only for fifth amendment reasons, but also for the protection of the integrity of two separate processes:

> The "freeze" we think is not for the protection of the employee only, but also rises out of a sense that deferrable civil proceedings constitute improper interference with the criminal proceedings if they churn over the same evidentiary material.

*Peden,* 512 F.2d at 1103.

*C3, Inc. v. United States,* 5 Cl.Ct. 659 (1984), shows that *Peden* will be followed in adjudication of a contract claim in the Claims Court. *See also United States v. LaSalle National Bank,* 437 U.S. 298, 312, 98 S.Ct. 2357, 2365, 57 L.Ed.2d 221 (1978) (noting the policy interest against broadening the Justice Department's right of criminal discovery and against infringing on the role of the grand jury as the principal tool of criminal accusation). Although this consideration of judicial administration was not raised by counsel, the court has an independent obligation to consider the potential for interference in these circumstances. The board's discussion shows it was wholly unaware of those cases.

In the case at bar, the dangers of parallel proceedings have already been realized. Afro-Lecon's motion to suppress the fruits of the discovery abuses has been granted in part and denied in part. *United States v. Okwumabua and Afro-Lecon, Inc.,* No. CR–86–28E (W.D.N.Y. Dec. 26, 1986). In this order, the court criticized the government:

> This Court is not approbatory of the prosecution's utilization of the ploy of having a criminal investigator "sit in" on and participate in a non-criminal conference or interview when criminal prosecution was, as here, eminently predictable and without advising the "target" of the investigator's role and purpose.

*Id.*

The district court concluded that, in regard to the documents involved, there was no harm to the defendants because their existence was known prior to the conference and would have properly become available through a *subpoena duces tecum.* Verbal statements, however, made by the defendants, the court noted, could not be used against the defendants because of the improper tactics employed by the prosecution. The district court noted:

> Suppression * . * * is merited not only by equity and good conscience but also by the salutary aspect of impressing upon the prosecution that such overreaching is not compatible with evenhanded justice which, rather than achieving convictions, should be a prosecutor's goal.

*Id.*

The abuse of civil discovery sanctioned by the district court is now fait accompli. On remand, we ask the board to evaluate in view of the precedent cited whether there is any additional danger of abuse of discovery or whether there is any likelihood that the civil case, if proceeded with, will interfere with the administration of the criminal proceedings.

### III

As Judge Friedman noted in *Zenith Radio Corporation v. United States,* 764 F.2d 1577, 1579, 3 Fed.Cir. (T) 169 (1985), there are three schools of thought in treating privileges asserted by plaintiffs. The first approach considers that the party automatically waives his privilege by pursuing judicial relief. *Id.* (citing *Independent Productions Corp. v. Loew's, Inc.,* 22 F.R.D. 266 (S.D.N.Y.1958)). The second approach balances the need for discovery against the need for secrecy. *Id.* (citing *Black Panther* ). The third theory denies a plaintiff the privilege if he places the

matter subject to the privilege in issue and the information is vital to the defendant's case. *Id.* (citing *Hearn v. Rhay*, 68 F.R.D. 574 (E.D.Wash.1975)).

■ The board adopted the "automatic waiver" theory. We believe that this approach is too rigid and choose instead the balancing approach suggested in *Hearn* and elsewhere. This is particularly appropriate where the civil case is not in court but in a tribunal provided by defendant itself for dispute resolution. We conclude that there may be greater reasons to postpone civil proceedings when even an appellant requests it where there is a parallel criminal suit.

In *Kordel* the Court noted the strong policy interest in allowing both the civil and criminal cases brought by the *government* to go forward:

It would stultify enforcement of federal law to require a governmental agency such as the FDA invariably to choose either to forgo recommendation of a criminal prosecution once it seeks civil relief, or to defer civil proceedings pending the ultimate outcome of a criminal trial.

*Kordel*, 397 U.S. at 11, 90 S.Ct. at 769 (citation omitted).

This important government interest is absent when the civil case is not initiated by the government. Although there are other interests of possible harm to the civil defendant, which we will address *infra*, the harm discussed in *Kordel* is not at issue at present.

■ Essentially, the board concludes that one may not bring a suit, "wave the sword" of the fifth amendment, and then maintain the suit. We agree that a party may not claim a fifth amendment privilege and *proceed* with his suit. *Accord Lyons v. Johnson*, 415 F.2d 540 (9th Cir.1969), *cert. denied*, 397 U.S. 1027, 90 S.Ct. 1273, 25 L.Ed.2d 538 (1970). Afro-Lecon, however, asks for a *stay* of civil proceedings and, as a result, does not raise the problem of placing the defendant in the position of maintaining a defense without necessary discovery.

In *Wehling v. Columbia Broadcasting System*, 608 F.2d 1084 (5th Cir.1979), the court considered circumstances very much like those at issue in the case at hand. In *Wehling*, the plaintiff appealed the dismissal of his libel action against CBS where his refusal to testify deprived CBS of information essential to its defense. *Id.* at 1086. Wehling was required to appear before a grand jury and believed that he was the subject of their investigation. *Id.*

The court in *Wehling* concluded that the federal rules do not permit a court to punish a party who resists discovery by asserting a valid claim of privilege and that dismissing a plaintiff's action with prejudice solely because he exercises his privilege against self-incrimination is constitutionally impermissible. *Id.* at 1087. The basis of this decision was the principle articulated by the Court in *Simmons v. United States*, 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968), and elsewhere, that procedures should not require a party to surrender one constitutional right in order to assert another one. A similar reluctance to use the ultimate sanction of dismissal was displayed by the Fourth Circuit in *Shaffer v. United States*, 528 F.2d 920 (4th Cir.1975). In *Shaffer*, the plaintiff instituted an action to recover a wagering tax payment. The government counterclaimed for an additional assessment. Plaintiff invoked the fifth amendment privilege during discovery. The district court dismissed plaintiff's action, and the Fourth Circuit reversed holding that the government should first attempt to obtain information by granting use immunity to plaintiff with regard to any criminal proceeding other than one related to perjury. *Id.* at 922.

In *Wehling*, CBS advocated, as does the government here, agreed with by the board, that one who brings suit and then claims fifth amendment privileges is akin to the spoiled child who wants the cake and the right to consume it as well. In *Wehling*, the court properly addressed this misguided idea:

It is true that, as a voluntary litigant, the civil plaintiff has created the situation which requires him to choose between his

silence and his lawsuit. In most cases, however, a party "voluntarily" becomes a plaintiff only because there is no other means of protecting legal rights. As one commentator has observed, although the plaintiff-defendant "distinction is superficially appealing, * * * civil plaintiffs seldom voluntarily seek situations requiring litigation."

608 F.2d at 1089 n. 10 (citation omitted). *See also* Note, *Plaintiff as Deponent: Invoking the Fifth Amendment*, 48 U.Chi.L. Rev. 158, 162 (1981) (challenging voluntary-involuntary distinction); Note, *Toward a Rational Treatment of Plaintiffs Who Invoke the Privilege Against Self-Incrimination During Discovery*, 66 Iowa L.Rev. 575, 594–601 (1981) (advocating the balancing approach rather than per se dismissal of plaintiff's case). We agree with the Fifth Circuit and decline to accept the wooden plaintiff-defendant distinction.

We now address the appropriate analysis for parallel proceedings. Neither the court in *Wehling* nor this court concludes that there is a per se right to postponement of civil proceedings under the circumstances of these two cases. Rather, a balancing must occur of the interest of the appellant in postponement, which is strong, against the possible prejudice to the appellee by way of important evidence that will be lost over time. The court in *Wehling* found that the district court abused its discretion by not granting the stay, yet noted that the district court could dismiss the plaintiff's case at any future point if crucial avenues of discovery were shown to be closing during the three-year period of the stay. *Wehling*, 608 F.2d at 1089. We remand to the board to assess the sources of evidence for the order on accounting and to find whether the requested postponement will create an appreciable prejudice to the defendant's case.

### IV

The government contends that Afro-Lecon, as a corporation, does not possess fifth amendment privileges and may not imbue itself with such privileges by appointing a corporate agent who will then invoke his own fifth amendment right. This result, the government concludes, would effectively convey a privilege to the corporate entity that it does not possess. As we see it, this analysis mistakes part of the problem for all of it. The broad question is whether the discovery clauses in the Rules of Criminal Procedure are to be rendered meaningless, whether or not they are based on the fifth amendment.

However, the fifth amendment will doubtless be considered on the remand, so we state our views. It is well settled that a corporation does not possess a fifth amendment right against self-incrimination. *Wilson v. United States*, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911). In *United States v. Kordel*, 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970), the Court noted that a corporation, when served with interrogatories, must "'appoint an agent who could, without fear of self-incrimination, furnish requested information as was available to the corporation.'" *Id.* at 8, 90 S.Ct. at 767 (quoting *United States v. 3963 Bottles, More or Less, of Enerjol Double Strength*, 265 F.2d 332, 336, *cert. denied*, 360 U.S. 931, 79 S.Ct. 1448, 3 L.Ed.2d 1544 (1959)).

As the government suggests, the Court in *Kordel* cautioned that the selective appointment of an agent who fears self-incrimination would improperly convey a fifth amendment privilege to the corporation. *Id.* The Court suggested, however, that the existence of an individual who can speak without fear of incrimination is determinative:

> The respondents press upon us the situation where no one can answer the interrogatories addressed to the corporation without subjecting himself to a "real and appreciable" risk of self-incrimination. For present purposes we may assume that in such a case the appropriate remedy would be a protective order under Rule 30(b), postponing civil discovery until the determination of the criminal action.

*Id.* 397 U.S. at 8–9, 90 S.Ct. at 768. *See also General Dynamics Corporation v. Selb Manufacturing Co.*, 481 F.2d 1204,

1210 (8th Cir.1973) (citing *Kordel* for proposition that protective order may issue in "extreme" cases where no corporate agent can answer interrogatories without "real and appreciable" risk of self-incrimination), *cert. denied,* 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974).

The Court in *Kordel* did not reach this issue as described above, noting the failure of the corporation to assert this argument below and the absence below of personal fifth amendment claims by the officers. *Kordel,* 397 U.S. at 9–10, 90 S.Ct. at 768. The Court also based its decision on the absence of any improprieties of record attributable to the parallel proceedings and the strong law enforcement interest against forcing the FDA to choose between proceeding with criminal and civil cases. *Id.* at 11–12, 90 S.Ct. at 769.

The decision in *Kordel* provides helpful guidance for the case at bar. Afro-Lecon suggests that there are no agents who can speak for Afro-Lecon because individuals with the information are subject to criminal investigation. The conclusions presented by the board are consistent with Afro-Lecon's claim:

> The cooperation of these individuals [witnesses] is crucial to appellant's ability to adequately prepare and present its case to the Board. The immediate effect of their refusal to cooperate is the inability of appellant to satisfactorily comply with the Board's Order on Accounting.

GSBCA No. 7508, 86–1 BCA (CCH) ¶ 18,716 at 94,130.

Afro-Lecon concedes that in cases where courts have found a corporate duty to appoint an agent to answer interrogatories, it has always been possible to find such an agent. Reply brief of appellant at 9. The crucial difference in regard to the case at bar, Afro-Lecon suggests, is that responses to the order on accounting can *only* be produced by the personal accounts of Okumaba or Costanza and not by a general review of company files. The case at bar, Afro-Lecon concludes, is identical to that scenario anticipated in *Kordel,* where there is no person who can answer interrogatories without facing the "real and appreciable" risk of self-incrimination.

■ The government contends that the Afro-Lecon's plant manager, Mr. Costanza, was not indicted and, therefore, could have answered the interrogatories. Afro-Lecon notes that Costanza has been subject to investigation in relation to the criminal charges pending against the company. Without evidence of record, beyond the assertions of Afro-Lecon, we are unable to assess whether the board's general conclusion regarding the unavailability of witnesses includes Costanza. We are unable also to conclude whether Costanza properly claimed a "real and appreciable" risk of self-incrimination or whether the board considered whether this witness is subject to such a risk. We therefore include in our remand a direction that the board determine this fact. We note that Costanza need not be indicted to properly claim the fifth amendment privilege. It is enough if his answers "furnish a link in the chain of evidence" leading to his conviction for a federal crime. *Hoffman,* 341 U.S. at 486, 71 S.Ct. at 818. As the Court noted in *Hoffman:*

> To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.

*Id.* at 486–87, 71 S.Ct. at 818.

We also remand for a more complete assessment of whether there are any sources of information in Afro-Lecon's files that can be conveyed to an agent designated to respond to the order on accounting.

### Conclusion

The board's order of April 11, 1986, to deny Afro-Lecon's motion to stay civil proceedings until the completion of criminal proceedings and to dismiss the appeal, is vacated and remanded for additional proceedings in accordance with this opinion.

VACATED AND REMANDED.

NIES, Circuit Judge, concurring.

I concur because I see the issue somewhat differently. Appellant sought a stay of board proceedings on the ground that at the time its response was due to the board's Order on Accounting, it was impossible to respond because the persons who could provide the explanation for its claim were potential defendants in a criminal case and allegedly refused, on advice of counsel, to cooperate. The board accepted that explanation stating, "The immediate effect of their refusal to cooperate is the inability of appellant to satisfactorily comply with the Board's Order on Accounting." 86–1 BCA (CCH) ¶ 18,716 at 94,130 (1986). Under such circumstances, appellant is guilty of no willful disobedience or even gross negligence in failing to respond to the board's order. A dismissal of its claim with prejudice would have been an abuse of discretion in my view. Notably, however, the board did not dismiss the claim as a matter of *discretion*. The board held, as a matter of *law*, "that in a civil suit a party placing facts in issue may not rely upon the fifth amendment to avoid disclosure of such facts and still maintain his suit." *Id.* at 94,132. From that legal premise, the board concluded that appellant was not entitled to a stay.

The board's premise, i.e., that a party may not maintain its claim and at the same time assert the fifth amendment, even if correct, does not apply here. Appellant sought a stay of the order because of an impossibility in complying, not because of its assertion of a fifth amendment privilege. Indeed, as far as the record here is concerned, no one has asserted fifth amendment rights *in this proceeding*. Such rights have merely been alluded to by appellant's counsel as the explanation for the appellant's failure to respond. The board, nevertheless, treated counsel's statements as sufficient to establish that it was impossible for appellant to comply with its order. At this moment in these proceedings, that is its ruling.

Thus, I agree that the board's order must be vacated and the matter remanded. Having found impossibility of compliance with its order, the board should not have dismissed but, rather, should have granted a stay for a reasonable period. *See United States v. Kordel*, 397 U.S. 1, 8–9, 90 S.Ct. 763, 767–68, 25 L.Ed.2d 1 (1970) (dicta). The government would be, of course, free at any time to seek to have the stay lifted if the impossibility is removed in the interim. At the end of the stay appellant would be required to proceed or to put forth satisfactory grounds for a continuance, at which time the matter would be re-evaluated in light of subsequent developments and the prejudice to the government caused by further delay.