896 F.Supp. 553 (1995)
In re PHILLIPS, BECKWITH & HALL.
Misc. No. 93-9-A.
United States District Court, E.D. Virginia, Alexandria Division.
August 2, 1995.
*554 *555 Robert C. Adams, Tydings, Bryan, Adams & Ritzert, P.C., Fairfax, VA, Jerry Phillips, Phillips, Beckwith & Hall, Fairfax, VA, for Phillips, Beckwith & Hall.
Helen F. Fahey, United States Attorney, Jay Apperson, Gordon D. Kromberg, Assistant United States Attorneys, Alexandria, VA, for the Government.

MEMORANDUM OPINION
ELLIS, District Judge.
This may be said to be the first chapter of the second volume of a long saga concerning the criminal forfeiture of attorneys' fees. In the first volume, the government sought forfeiture under 21 U.S.C. § 853 of attorneys' fees paid to a law firm by a client charged with drug offenses. The government believed that the law firm had reason to know that the client derived the money to pay the fees from drug trafficking. Ultimately, this forfeiture effort met only partial success.[1] Here begins the second volume, in which the government seeks forfeiture of attorneys' fees paid earlier by the same client to another law firm, Phillips, Beckwith & Hall (the "Phillips firm"). Significantly, this volume contains one plot element not encountered in the first, namely that the government is contemplating prosecution of certain of the Phillips firm's personnel on criminal charges relating to the events that gave rise to the forfeiture proceeding. As a result, the law firm contends that proceeding with the forfeiture case now, while the possibility of criminal prosecution remains, presents some of the firm's personnel with a difficult dilemma: They may either testify in support of their claim to the forfeited funds and thereby waive their Fifth Amendment rights, or alternatively, remain silent in the forfeiture proceeding, thereby preserving their Fifth Amendment rights but jeopardizing, by their silence, the firm's position in the forfeiture proceeding. To avoid this dilemma, the Phillips firm asks for a stay of the forfeiture proceeding, a measure the government opposes.

I.
In 1990, a federal grand jury began investigating William Paul Covington for drug trafficking. On the basis of this investigation, the government began to seize a number of Covington's assets alleged to be drug-related. When this occurred, Covington determined he needed legal counsel. In May 1990, he retained the Phillips firm, and made *556 substantial cash payments to it for attorneys' fees and other costs. The government and the Phillips firm dispute the circumstances, amounts, and dates of these payments, the details of which are not relevant to the issue at bar. The Phillips firm represented Covington through the remainder of 1990 and the first part of 1991. In August 1991, dissatisfied with the Phillips firm's services, Covington announced that he was hiring another firm, Moffitt, Zwerling & Kemler, P.C., ("the Moffitt firm") as his new defense counsel. Once again, Covington made substantial cash payments to his new attorneys.
As its investigation of Covington continued into 1992, the government began to turn its attention to Covington's attorneys and the fees Covington paid them. The government believed that Covington paid the fees with money derived from drug trafficking, that attorneys at both law firms had reasonable cause to know this, and therefore that the fees were subject to forfeiture under federal law. See 21 U.S.C. § 853(a), (c). To this end, the government began seeking information about the attorneys' fees, inter alia, by executing search warrants on the law firms' bank account records.
A conflict of interest ultimately compelled the Moffitt firm to withdraw as Covington's counsel. Represented by new counsel, Covington pled guilty to several drug, firearm, and money laundering offenses. On February 25, 1993, Covington was sentenced by another Judge of this division. At sentencing, Covington acknowledged that the money paid to his attorneys, including the Phillips firm, constituted proceeds of drug trafficking.[2] Accordingly, forfeiture orders were entered against the Phillips firm for attorneys' fees in the amount of $27,800, and against the Moffitt firm for fees in the amount of $103,800. In April 1993, both law firms responded to the forfeiture orders with petitions contending that they were "reasonably without cause to believe that the property was subject to forfeiture." 21 U.S.C. § 853(n)(6)(B).
The Moffitt firm's petition was adjudicated first. After an evidentiary hearing, the Court concluded that the Moffitt firm had not met its burden of proving that it took Covington's money without reasonable cause to know it was subject to forfeiture as drug proceeds. See Moffitt I. Yet, the Moffitt firm next objected to the proposed forfeiture on the ground that the fees were largely dissipated well before the government obtained a restraining order or forfeiture order applicable to them. As a result, the government was forced to pursue the forfeiture by "tracing" the dissipated fees, a task which proved to be difficult and only partially successful. See Moffitt II & Moffitt III; supra note 1.
In April 1995, after a final order on the Moffitt firm's petition was finally entered, the government moved to set a hearing date on the Phillips firm's petition to determine whether the Phillips firm had reasonable cause to believe Covington paid his attorneys' fees with drug proceeds. See 21 U.S.C. § 853(c), (n). Yet, there is an important element present in this forfeiture case that was absent in that involving the Moffitt firm. The government believes that certain of the Phillips firm's attorneys and other employees may have committed criminal offenses in connection with receipt of the attorneys' fees paid by Covington and the government's efforts to forfeit them. No charges have been filed, and it is currently unclear when, if ever, any charges will be brought. The government has identified one of the firm's principals, Jerry M. Phillips, and his wife, Kay Phillips, the firm's bookkeeper, as targets of a grand jury investigation.[3] According to the government, potential charges against the targets include failure to file appropriate IRS Forms 8300 on receipt of Covington's money, failure to comply with subpoenas for fee records, falsification of documents submitted in response to subpoenas, false statements *557 made to government agents, false statements in the firm's § 853(n) petition, tax charges stemming from receipt of Covington's money, and tax charges unrelated to the forfeiture matter.
On May 12, 1995, both sides appeared for a hearing on the Phillips firm's petition, and were poised to begin presenting evidence, when the Phillips firm made an oral motion to stay the matter. The Phillips firm's concern was that the lingering possibility of criminal prosecution posed a dilemma for its witnesses, the firm lawyers and personnel involved in the fee transaction. If these persons waived their Fifth Amendment rights and testified in support of the petition, the government could then use the testimony as evidence in any criminal prosecutions it might later bring. On the other hand, if the witnesses declined to testify, it would imperil the Phillips firm's chances of meeting its burden of proof and prevailing in the forfeiture proceeding. In particular, the critical issue in the forfeiture case is whether Jerry M. Phillips, the attorney who accepted Covington's money, had reason to know the money was derived from drug trafficking. Yet, Phillips has been identified as a target of the grand jury's investigation and he has been advised by his counsel not to testify at the forfeiture hearing.
The Court granted the motion and stayed the forfeiture case until July 14, 1995, in the expectation that, by that date, further light would be shed on the government's intentions with respect to the potential criminal prosecutions. This expectation was not fulfilled, for the government remains uncertain even today whether it will proceed with criminal charges against any member or employee of the Phillips firm. Thus, the question now presented is whether to dissolve or continue the stay of the forfeiture proceeding.

II.
Parties and witnesses in civil proceedings often face an acute dilemma when they are also targets of a related, potential criminal prosecution. If they testify, they waive their Fifth Amendment privileges and the testimony may be used against them as evidence in a criminal prosecution. See United States v. Kordel, 397 U.S. 1, 7-10, 90 S.Ct. 763, 766-69, 25 L.Ed.2d 1 (1970). But if they invoke their Fifth Amendment right against self-incrimination, they risk fatally undermining their interests in the civil matter. Their Fifth Amendment privilege cannot fill an evidentiary void left by their silence. See United States v. Rylander, 460 U.S. 752, 758, 103 S.Ct. 1548, 1553, 75 L.Ed.2d 521 (1983). Moreover, the fact-finder in the civil matter may draw an adverse inference from their refusal to testify. See Baxter v. Palmigiano, 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976). While this dilemma may arise in a civil case involving only private litigants, it arises more often in cases, such as civil forfeiture proceedings, where the government is the opposing party.
Faced with this dilemma, parties have often asked courts to stay civil proceedings until the threat of criminal prosecution has abated.[4] The Constitution does not require courts to grant such stays. See Keating v. OTS, 45 F.3d 322, 326 (9th Cir.1995); Afro-Lecon, Inc. v. United States, 820 F.2d 1198, 1202 (Fed.Cir.1987); SEC v. Dresser Indus., Inc., 628 F.2d 1368, 1375 (D.C.Cir.), cert. denied, 449 U.S. 993, 101 S.Ct. 529, 66 *558 L.Ed.2d 289 (1980). Rather, it is within courts' discretion whether to stay civil cases on this basis. See Kordel, 397 U.S. at 12 & n. 27, 90 S.Ct. at 770 & n. 27; Afro-Lecon, 820 F.2d at 1202; Kashi v. Gratsos, 790 F.2d 1050, 1057 (2d Cir.1986). In determining whether to grant stays in this situation, courts have taken many different considerations into account. See, e.g., Pollack, Parallel Civil & Criminal Proceedings, 129 F.R.D. 201 (1989) (collecting cases and discussing factors considered in them). In essence, the test is one of balancing equities. See Landis v. North American Co., 299 U.S. 248, 254-55, 57 S.Ct. 163, 165-66, 81 L.Ed. 153 (1936) (decision whether to stay "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance").[5] In applying this balance, courts have held that some attempt must be made to accommodate a civil litigant's Fifth Amendment concerns, and therefore a stay should be granted if one party requests it and the other party will not be substantially prejudiced.[6] Yet, a stay is improper if the opposing party demonstrates that it will result in genuine, substantial prejudice to its interests. See Afro-Lecon, 820 F.2d at 1206 (remanding for lower court to determine whether requested stay would create "appreciable prejudice" to opposing party's case); Wehling, 608 F.2d at 1089 (recognizing lower court's discretion to terminate stay if party establishes prejudice). In this case, the balance of interests tips decisively against a stay, for the government has presented several significant ways in which it will be prejudiced by continuation of the stay.
First, the government and the public have an interest in proper enforcement of the forfeiture laws. See Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 679, 686-87, 94 S.Ct. 2080, 2089-90, 2093-94, 40 L.Ed.2d 452 (1974) (describing interests served by forfeiture laws). The government's interest in proceeding with this forfeiture action is particularly strong because the government does not have possession of the disputed property. In many cases where parties have sought to stay civil forfeiture actions, the government has seized the property, and will continue to hold it during the duration of the stay.[7] In that situation, the forfeiture claimant seeking the stay is willing to defer its own opportunity to win return of the property. Here, the government has not seized any property from the Phillips firm pursuant to the March 1993 forfeiture order. Thus, in seeking the stay, the law firm is attempting to postpone the government's opportunity to collect forfeited property. Under these circumstances, the government has a stronger interest in proceeding toward execution of its forfeiture order.
*559 The government also has an interest in moving ahead promptly with this case in the event it is ultimately forced to "trace" the forfeited property. This may come about as follows. First, assuming, arguendo, that the Phillips firm does not carry its burden of proving it was without reasonable cause to know the source of Covington's money, the government's forfeiture effort will still be far from complete. This is so because it appears that the Phillips firm has long ago spent the funds it received from Covington. To recover money from the Phillips firm under § 853, therefore, the government will have to trace the money received from Covington in May 1990 to property held by the law firm in February 1993 when a forfeiture order pertaining to the attorneys' fees was entered. See Moffitt II, 864 F.Supp. at 541-42. And this tracing effort may become more difficult with the passage of time, as the money is spent and the assets bought with the money are sold, traded, or dissipated. In other words, the tracing trail becomes colder every day. In the Moffitt case, for example, the activities of a busy law firm, even over a far shorter period of time, resulted in lengthy and complex tracing paths that were difficult for the government to unravel years later. See Moffitt III. Thus, the government's interest in exercising its tracing remedies under the statute also weighs against staying this forfeiture proceeding.
Staying the forfeiture proceeding may also impair the government's interests by preventing it from bringing a common-law conversion action against the Phillips firm. As an alternative to tracing the attorneys' fees under the forfeiture statute, the government believes it may recover the full amount of the fees, regardless of when and how the firm dissipated them, through a conversion action under Virginia's common law. The Court rejected this approach in the Moffitt case, holding that federal forfeiture law preempts such a conversion action. See Moffitt IV, 875 F.Supp. at 1203-07. Yet, the government has appealed that decision, and wants to pursue its conversion remedies against the Phillips firm in the event its appeal is successful.[8] The government believes that it may recover in conversion, but only if it first prevails in the forfeiture proceeding on the issue of whether the law firm had reasonable cause to know the client's money constituted drug trafficking proceeds subject to forfeiture.[9] In other words, the government believes it cannot properly file a conversion action until the Phillips firm's § 853 petition has been adjudicated. Yet, the government must file the conversion action by May 1996 to satisfy the six-year statute of limitations. See 28 U.S.C. § 2415(a) (statute of limitations for actions by United States). In sum, continuing the stay of the forfeiture case will soon deprive the government of the conversion remedies it believes it possesses against the law firm.
It is also significant that, because memories fade over time, the government's case, based chiefly on Covington's recollection, will inevitably erode during the stay. A party is not entitled to delay resolution of a civil action, even to accommodate her Fifth Amendment interests, if her adversary's case will deteriorate as a result of the stay. See Afro-Lecon, 820 F.2d at 1206; Wehling, 608 F.2d at 1089; United States v. Certain Real Property & Premises Known as 1344 Ridge Road, 751 F.Supp. 1060, 1063 (E.D.N.Y. *560 1989). The force of this point is evident when it is recalled that the central issue in this forfeiture action is whether the Phillips firm had reason to know that Covington used drug trafficking proceeds to pay his attorneys' fees. Already five years have passed since the disputed events occurred, and witnesses' memories are certain to fade as further time passes. Moreover, the government's principal witness on this issue is Covington, and as the government plausibly contends, his recollection of the disputed events is likely to deteriorate faster than that of the Phillips firm's attorneys. While meticulous details about the amounts and dates of Covington's fee payments are of critical importance to the attorneys, for both civil and criminal reasons, they are not of overriding concern to Covington as he sits in prison.
Finally, further delay of this forfeiture proceeding has particular significance for the government's chief witness.[10] Covington hopes his cooperation with the government will eventually result in a sentence reduction for substantial assistance pursuant to Rule 35, Fed.R.Crim.P.[11] The government is still evaluating the value of his cooperation efforts and has not finally determined whether he is entitled to a Rule 35 motion. Thus, delaying the hearing on the Phillips firm's § 853 petition means postponing the government's resolution of Covington's status with respect to Rule 35. Covington has an interest in resolution of this issue without undue delay.[12] While this interest does not, by itself, outweigh the Fifth Amendment interests of the Phillips firm's witnesses, it arguably adds some weight to the government's side of the balance of interests presented here.
In sum, the government has several significant interests in proceeding now with this forfeiture proceeding, and the balance therefore weighs in the government's favor. This is not to say that the forfeiture action will not put the Phillips' firms witnesses to a difficult decision with respect to their Fifth Amendment privileges. Yet, the Constitution does not guarantee that the exercise of Fifth Amendment rights will be without cost in the civil arena. A party who chooses to assert the privilege against self-incrimination in a civil case must live with the consequences, and "[i]f this be seen as a `price' on the *561 assertion of the privilege, so be it." United States v. Taylor, 975 F.2d 402, 404 (7th Cir. 1992); see also Rylander, 460 U.S. at 758-59, 103 S.Ct. at 1553-54; In re Grand Jury Subpoena (Under Seal), 836 F.2d 1468, 1472 & n. 4 (4th Cir.), cert. denied, 487 U.S. 1240, 108 S.Ct. 2914, 101 L.Ed.2d 945 (1988).
In sum, the stay in this matter entered by the Order of May 12, 1995 will be dissolved, and a date for hearing of this matter will be scheduled.
An appropriate order will issue.
NOTES
[1] The forfeiture proceeding which constitutes the first volume of the saga is discussed in several opinions. See In re Moffitt, Zwerling & Kemler, P.C., 846 F.Supp. 463 (E.D.Va.1994) ("Moffitt I"), 864 F.Supp. 527 (E.D.Va.1994) ("Moffitt II"), 875 F.Supp. 1152 (E.D.Va.1995) ("Moffitt III"). From the $103,800 sought by the government in that case, the government ultimately obtained forfeiture of approximately $18,000, a promissory note, four office chairs, and a 2/9ths interest in a copier machine. The matter is presently pending on appeal. Also on appeal is the government's contention, rejected by the Court, that the government can recover the entire $103,800 by pursuing a state claim for conversion. See United States v. Moffitt, Zwerling & Kemler, P.C., 875 F.Supp. 1190 (E.D.Va.1995) ("Moffitt IV").
[2] Covington testified to the same effect at the hearing on the Moffitt firm's § 853 forfeiture petition. See Moffitt I, 846 F.Supp. at 468.
[3] The government has provided an immunity letter to one of the firm's members, Gregory Beckwith. The third member of the firm, David M. Hall, is not a grand jury target, and there is no indication that he is a subject of the government's criminal investigation.
[4] One problem with staying civil cases on this ground is that it is sometimes difficult to tell when, if ever, the possibility of criminal prosecution has passed. Some courts have stayed civil matters until the criminal statute of limitations has run. See, e.g., Wehling v. Columbia Broadcasting Sys., 608 F.2d 1084, 1089 (5th Cir.1979). Here, determining that date is difficult because it is uncertain what charges the government might bring. For example, the government might charge violation of currency transaction reporting requirements based on the Phillips firm's receipt of Covington's cash in May and June 1990. But it might also charge perjury or obstruction of justice based on the filing of the firm's § 853 petition in April 1993. The statute of limitations on the latter offense would not expire until April 1998. See 18 U.S.C. § 3282 (five year limitations period for noncapital federal crimes). Moreover, the government correctly notes that, even then, the possibility of criminal prosecution would not be completely eliminated, for no matter when the forfeiture hearing occurs, witnesses testifying at the hearing will be subject to prosecution if the government believes the testimony given at the hearing is itself an instance of perjury.
[5] The balance is decidedly in favor of a stay if there is bad faith on the government's part by, for example, pursuing a civil lawsuit solely for the purpose of aiding a criminal investigation, or threatening or delaying bringing criminal charges in order to extract an advantage in the civil case by keeping the cloud of criminal prosecution overhead. See Kordel, 397 U.S. at 10-11, 90 S.Ct. at 768-69; In re Grand Jury Subpoena (Under Seal), 836 F.2d 1468, 1472 n. 6 (4th Cir.), cert. denied, 487 U.S. 1240, 108 S.Ct. 2914, 101 L.Ed.2d 945 (1988). There is no allegation or indication of bad faith here. While the government is unable to say when, if ever, criminal charges will be filed, the government explains that this uncertainty results from the fact that the investigation is continuing and that the government's attorneys have other matters that must take precedence over the immediate completion of this investigation.
[6] See United States v. Certain Real Property 566 Hendrickson Boulevard, 986 F.2d 990, 996 (6th Cir.1993); United States v. All Assets of Statewide Auto Parts, 971 F.2d 896, 905 (2d Cir.1992); United States v. Certain Real Property, Commonly Known as 6250 Ledge Road, 943 F.2d 721, 729 n. 9 (7th Cir.1991); United States v. Parcels of Land, 903 F.2d 36, 44 (1st Cir.), cert. denied, 498 U.S. 916, 111 S.Ct. 289, 112 L.Ed.2d 243 (1990); United States v. U.S. Currency, 626 F.2d 11, 15-17 (6th Cir.), cert. denied, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 290 (1980); cf. Shaffer v. United States, 528 F.2d 920 (4th Cir.1975) (staying civil case to accommodate both parties to tax refund action); United States v. Real Property & Premises Known as 4408 Hillside Court, 966 F.2d 1445, 1992 WL 120217 (4th Cir.1992) (unpublished) (noting that "the responsibility of a district court to seek an accommodation for an individual's [Fifth Amendment] rights in a forfeiture proceeding may be significant").
[7] See, e.g., U.S. Currency, 626 F.2d at 18 n. 1 (recognizing hardship to claimant where government keeps seized property during stay); see also Afro-Lecon, 820 F.2d at 1202 (noting that "the government has the money in dispute, which it retains while the stay, if granted, lasts").
[8] At oral argument in this matter, the Phillips firm requested that the stay continue at least until the Fourth Circuit decides the Moffitt appeal. This suggestion is unappealing for several reasons. First, it is uncertain when the appeal will be finally resolved, especially since, as the government suggests, the parties are likely to seek certiorari following the Fourth Circuit's decision. Second, the government has presented interests weighing against a stay of even this duration. Third, if the purpose of stay is to accommodate witnesses' Fifth Amendment concerns, then there is no sound reason to pick the date of the Moffitt appeal's conclusion as the date on which the stay should terminate. The Fifth Amendment dilemma faced by the law firm's witnesses does not turn in a significant way on the outcome of the Moffitt appeal.
[9] The government's position in this regard contradicts Virginia's rule that a party may be liable in conversion even if he acted reasonably and in good faith. See Universal C.I.T. Credit Corp. v. Kaplan, 198 Va. 67, 92 S.E.2d 359, 365 (1956). This reflects, once again, the incongruity involved in the government pursuing a hybrid action based in part on § 853, and in part on Virginia's common law of conversion. See Moffitt IV, 875 F.Supp. at 1203-07.
[10] The government's interests alone, even without regard to Covington's situation, compel the conclusion that the stay in this matter must be lifted. Yet, Covington's interest also weighs against a stay, for it is well-established that, in exercising discretion as to whether to stay a civil case, courts may consider the interests of persons not parties to the litigation. See Bruner Corp. v. Balogh, 819 F.Supp. 811, 813 (E.D.Wis. 1993); United States v. Private Sanitation Indus. Ass'n, 811 F.Supp. 802, 805 (E.D.N.Y.1992).
[11] Covington was sentenced by another Judge of this division, and if the government determines that Covington has provided substantial assistance, the motion will be heard by that Judge.
[12] Covington has an interest in prompt resolution of his Rule 35 prospects, not only to resolve the matter and finally determine his sentence's length, but also to ensure that his right to a Rule 35 sentence reduction is not lost by the passage of time. A Rule 35 motion must be filed within one year after the date of sentencing, unless the motion is based on defendant having provided information learned more than one year after sentencing. See United States v. Speed, 53 F.3d 643, 645 n. 3, 64/-49 (4th Cir.1995) (discussing whether assistance provided prior to sentencing may be considered under Rule 35). The government filed a Rule 35 motion on Covington's behalf within the one-year period proscribed by the rule, although it apparently did so in order to preserve its option to bring a motion at a later time, and had not concluded that Covington had yet provided substantial assistance. It appears that, when and if the government decides that Covington is entitled to a substantial assistance reduction, it will then file a notice for hearing on the motion it filed. This practice complies with the literal command of Rule 35. A 1991 amendment to Rule 35(b) clarified that, while the government must file its motion within one year after sentencing, the court need not rule on the motion within that period. See Rule 35(b), Fed. R.Crim.P. (allowing reduction "on motion of the Government made within one year after the imposition of sentence"). Yet, this does not necessarily mean that the government can keep the Rule 35 door open indefinitely. See United States v. Hayes, 983 F.2d 78, 81 (7th Cir.1992) (stating that, under post-1991 version of Rule 35(b), court has "reasonable amount of time" within which to decide timely filed motion); Fed. R.Crim.P. 35(b), Notes of Advisory Committee on 1991 Amendment ("Although no specific time limit is set on the court's ruling on the motion to reduce the sentence, the burden nonetheless rests on the government to request and justify a delay in the court's ruling."). In sum, Covington has a substantial interest in prompt completion of his Rule 35 cooperation efforts.