ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- ) | |
| ) | |
| Public Warehousing Company K.S.C. ) | ASBCA No. 58078 |
| ) | |
| Under Contract No. SPM300-05-D-3128 ) | |

APPEARANCES FOR THE APPELLANT:      Michael R. Charness, Esq.
                                    Bryan T. Bunting, Esq.
                                    Jamie F. Tabb, Esq.
                                      Vinson & Elkins LLP
                                      Washington, DC

APPEARANCES FOR THE GOVERNMENT:     Daniel K. Poling, Esq.
                                      DLA Chief Trial Attorney
                                    John F. Basiak, Jr., Esq.
                                    Kristin K. Bray, Esq.
                                      Trial Attorneys
                                    Elizabeth Amato-Radley, Esq.
                                      Assistant Counsel
                                      DLA Troop Support
                                      Philadelphia, PA

## OPINION BY ADMINISTRATIVE JUDGE TING ON THE GOVERNMENT'S MOTION TO DISMISS PURSUANT TO BOARD RULE 30

In the Board's 12 November 2013 decision on jurisdiction, we rejected Defense Supply Center Philadelphia's (DSCP) alternate argument to dismiss this appeal pending the outcome of the criminal and civil fraud cases in the District Court. We did so because DSCP failed to make out a clear case of hardship and inequities in being required to go forward. *Public Warehousing Company K.S.C.,* ASBCA No. 58078, 13 BCA ¶ 35,460 (*PWC*). Through DSCP's new motion to dismiss, the U.S. Attorney for the Northern District of Georgia has explained that proceeding with ASBCA No. 58078 would compromise and interfere with ongoing criminal proceedings in the District Court. DSCP's motion this time is based on Board Rule 30. As an alternative, DSCP has moved to stay discovery in ASBCA No. 58078 pending the resolution of the criminal case. By Discovery Order No. 1, we stayed discovery pending our decision on DSCP's motion to dismiss. For reasons stated below, we grant DSCP's motion and dismiss this appeal without prejudice under Rule 30.

<u>STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION</u>

<u>Background</u>

1. In 2003, DSCP, now known as Defense Logistics Agency Troop Support (DLA Troop Support), awarded a "Prime Vendor" contract (PV1 Contract) to Public Warehousing Company K.S.C. (PWC) to deliver subsistence items to U.S. and Allied forces in Kuwait and Qatar (SOF ¶ 2).[1] The contract was amended in June 2003 adding the "Iraq Deployment Zone" requiring PWC to make deliveries to additional Authorized Customers in active combat zones. Under the contract, PWC was to be reimbursed for the cost of food plus a distribution price, including profit. (SOF ¶ 3)

2. DSCP continued the PV1 Contract with PWC through a bridging contract (PV Bridge Contract) from February 2005 to mid-December 2005 (SOF ¶ 4). In July 2005, DSCP awarded Contract No. SPM300-05-D-3128 (PV2 Contract) to PWC. The PV2 Contract included an 18-month base year and 3 options. PWC began performance of the PV2 Contract in December, 2005. DSCP exercised all three options extending the PV2 Contract to 4 December 2010. In all, PWC performed the PV1, PV Bridge, and PV2 Contracts continuously for approximately seven and a half years. (SOF ¶ 5)

3. Unlike the PV1 and the PV Bridge Contracts, the PV2 Contract contained a "PERFORMANCE BASED DISTRIBUTION FEES" clause (PBDF clause) whose purpose was to incentivize PWC to perform "at an optimal level" to achieve "customer satisfaction" (SOF ¶ 6). The PBDF clause established a six-month fee review cycle (SOF ¶ 7). Depending upon whether PWC's performance was rated as "Excellent," "Good," "Fair," or "Poor" in accordance with the standards prescribed in the PBDF clause, PWC could receive an increase in distribution fee, a decrease in distribution fee, or the standard distribution fee (SOF ¶¶ 6, 8).

4. A rating of "Excellent," "Good," "Fair," or "Poor" depends on two factors: PWC's (1) fill rate and (2) current Contractor Performance Assessment Report (CPAR) rating. An "Excellent" or "Good" rating requires the CO to determine that she "'would definitely,' award to this vendor today given that I had the choice." A "Fair" rating requires the CO to determine that she "'probably would not,' award to this vendor today given that I had the choice." A "Poor" rating requires the CO to determine that she "'probably would not' or 'would not,' award to this vendor today given that I had the choice." (SOF ¶ 8)

---

[1] Citations to SOFs in the sections before the "DECISION" portion of this opinion are to the SOFs in the Board's 12 November 2013 decision published at 13 BCA ¶ 35,460. References to SOFs in the "DECISION" portion of this opinion are to the SOFs in this opinion.

5. In November 2005, a few weeks before the end of the PV Bridge Contract, Kamal Mustafa Al-Sultan, a former PWC employee, filed under seal a complaint in the name of the United States, a False Claims Act (FCA) suit, 31 U.S.C. § 3732(a), in the United District Court for the Northern District of Georgia. The FCA complaint contained, *inter alia*, allegations relating to PWC's pricing practices with one of its local market ready items (LMRI) suppliers – The Sultan Center (TSC). The complaint remained under seal until November 2009. (SOF ¶ 18) Also in November 2005, the government opened an investigation of PWC concerning allegations of overcharging, kickbacks, and security issues (SOF ¶ 23).

6. On 27 April 2009, while PWC was performing Option 2 of the PV2 Contract, contracting officer Linda L. Ford (CO Ford) received a $119 million certified claim from PWC. The claim alleged that DSCP breached the PV2 Contract in failing to assess PWC's performance every six months for awarding PBDF. (SOF ¶ 37) Since no CPAR was issued under the PV2 Contract, PWC contended that "DSCP should have awarded the PBDF to PWC based on the fill rate metric alone." *Public Warehousing Company, K.S.C.*, ASBCA No. 56888, compl. ¶ 61. Thus, the $119 million claim assumed PWC was entitled to an increase in distribution fees from December 2005 through December 2008 (compl., tab 28 at 10). CO Ford acknowledged that no CPARs had been performed because there was an on-going fraud investigation and, because the Department of Justice (DOJ) had not made available the information developed, she had insufficient information to evaluate PWC's performance. CO Ford's letter said that she expected to issue a decision on the claim on or before 3 December 2009. (SOF ¶ 38) In July 2009, PWC appealed to the Board on the basis that its claim should be deemed denied and an appeal authorized pursuant to 41 U.S.C. § 7103(f)(5). The Board granted DSCP's motion to dismiss for lack of jurisdiction holding that, given the complexity of the PV2 Contract CPAR/PBDF assessments, the CO's commitment to issuing a decision by a specific date – 3 December 2009 – was reasonable. *Public Warehousing Company*, 09-2 BCA ¶ 34,265.

## The Superseding Indictment before the District Court

7. Less than two months after the Board dismissed ASBCA No. 56888, a grand jury in the Northern District of Georgia returned a six-count indictment on 9 November 2009 charging that PWC conspired to defraud the United States in the bidding process for the PV2 Contract and in overcharging the United States during the execution of the PV1, PV Bridge and the PV2 Contracts. Three months later, a grand jury in the Northern District of Georgia returned a Superseding Indictment (indictment) on 9 February 2009 charging PWC with the same six counts and adding Agility DGS Logistics Services Company and Agility Holdings, Inc., as defendants. (Mot. to dismiss, tab 1 at 2, ¶ 1)

3

8. Count I of the indictment alleges that PWC violated 18 U.S.C. § 1031 and 18 U.S.C. § 1001 in connection with its efforts to procure the award of the PV2 Contract (mot. to dismiss, tab 1 at 2, ¶ 2).

9. Count II of the indictment alleges that PWC violated 18 U.S.C. § 1031, 18 U.S.C. § 1001, 18 U.S.C. § 287, and 18 U.S.C. § 1343 in overcharging the government in PWC's performance of the PV1, PV Bridge and PV2 Contracts by (1) failing to purchase less expensive products because the vendor did not offer prompt payment discounts; (2) generating fraudulent billings by improperly charging the government for certain warehousing and distribution costs; (3) manipulating and inflating prices from distributors or vendors; (4) failing to return, and fraudulently concealing rebates, allowances, and discounts attributable to orders by the government under the contracts; and (5) reducing the pack size of the products to increase distribution fees claimed from the government (mot. to dismiss, tab 1 at 2, ¶ 3).

10. Count III of the indictment alleges that PWC violated 18 U.S.C. § 1031 by overcharging the government for distribution fees by asking vendors to reduce the pack size of products during the performance of the PV1 Contract (mot. to dismiss, tab 1 at 2, ¶ 4).

11. Count IV of the indictment alleges that PWC violated 18 U.S.C. § 1031 by generating fraudulent billings by improperly charging the government for certain warehousing and distribution costs during the performance of the PV2 Contract (mot. to dismiss, tab 1 at 2, ¶ 5).

12. Counts V and VI allege that PWC violated 18 U.S.C. §§ 1343 and 2, by using wire communications with vendors as part of its scheme to generate fraudulent billings by improperly charging the government for certain warehousing and distribution costs during the performance of the PV2 Contract (mot. to dismiss, tab 1 at 3, ¶ 6).

The *Qui Tam* Action before the District Court

13. On 13 November 2009, the United States intervened in part and declined to intervene on part in the *qui tam* action filed by Kamal Mustafa Al-Sultan. *United States ex. rel. Kamal Al-Sultan v. The Public Warehousing Company, K.S.C., a/k/a Agility, and The Sultan Center Food Products Company, K.S.C.*, No. 1:05-CV-2968. On 5 January 2011, the United States filed an amended complaint against PWC alleging six counts of violations of the False Claims Act, fraud, payment by mistake, unjust enrichment, and breach of contract. On 17 January 2013, the civil action in the District Court was administratively closed, subject to reopening by motion of any party, pending the resolution of an appeal in the Kuwait Court of Appeals. (Mot. to dismiss, tab 1 at 3, ¶ 7)

4

14. CO Ford did not issue her decision on PWC's $119 million claim on 3 December 2009 as promised. She notified PWC that in light of the pending civil and criminal cases, she would issue her decision on or before 21 May 2010. Using the same justifications and projecting a date on or before which she expected to issue a decision, CO Ford put off issuing her decision for over four years. Her 14 December 2011 letter – the seventh and last letter – stated that she expected to issue her decision on or before 8 June 2012. By notice dated 13 April 2012, nearly 11 months after it filed its amended ($158 million) and recertified claim, PWC appealed again pursuant to 41 U.S.C. § 7103(f)(5) on the basis that the CO had failed to issue a decision within the time period required. It filed its complaint at the same time. The Board docketed the appeal as ASBCA No. 58078.

## PWC's Prosecutorial Misconduct Case in the District Court

15. As a part of its defense against the Superseding Indictment, PWC's defense attorneys[2] filed in the United States District Court for the Northern District of Georgia on 21 February 2012 a motion to dismiss the indictment based on prosecutorial misconduct. The motion was accompanied by a supporting memorandum and requested an evidentiary hearing. (Gov't 11 May 2012 (first) mot. to dismiss, tab 11) The misconducts, PWC alleges the government attorneys and agents committed, include:

- improperly pressured DSCP's lead contracting officer to change her positive evaluation of PWC – stating that she would "definitely award the contract to PWC again" if given the chance – into a qualified "might or might not award" evaluation, because her favorable endorsement would have negatively affected the Government's investigation;

- instructed DSCP not to perform contractually mandated performance assessment reports and evaluations, which would have entitled PWC to a $160 million bonus, and thus, may have undermined the Government's investigation;

- interfered with the routine administration of the PV Contracts in order to prevent PWC and DSCP from resolving contractual disputes and interpretation issues[.]

(*Id.* at 2)

---

[2] Skadden, Arps, Slate, Meagher & Flom LLP represents PWC in the District Court criminal case.

5

16. On the second point above, PWC's prosecutorial misconduct memorandum explains: "While the prosecution could not keep PWC from reaching the minimum 97.5% fill rate...it could prevent PWC from achieving the requisite 'would definitely award' CPAR evaluation." The memorandum alleges "[r]ather than risk having the Philadelphia Supply Center provide PWC with a 'would definitely award' recommendation, the prosecution simply directed DSCP to stop completing CPAR evaluations altogether." (First mot. to dismiss, tab 11 at 28) The memorandum continued stating: "To date...Ms. Ford has yet to issue a final decision on PWC's claim – which now stands at nearly $160 million excluding interest – and has extended the time in which she expects to issue a final decision on at least six occasions" (*id.* at 29).

17. The DSCP employees alleged to have been involved in the issue of whether the prosecution pressured DSCP to alter the positive evaluations of PWC's performance include COs Ford and Dlugokecki; DSCP's internal fraud counsel, Aditya McDuffy; DSCP's section chief and CO Ford's immediate supervisor, Gary Shifton; DSCP's Chief of Overseas Prime Vendor Program, Gordon Ferguson; and DLA Assistant General Counsel, Normand Lussier (first mot. to dismiss, tab 11 at 16-18, 20). Among those alleged to have been involved in the issue of whether the prosecution prevented DSCP from completing additional PBDF performance evaluations include COs Ford and Dlugokecki (*id.* at 28, 29).

## PWC's Complaint before the Board

18. PWC's complaint in ASBCA No. 58078 summarized its case before the Board as follows:

> Beginning in 2005, and continuing through the date of this Complaint, with the acquiescence or approval of the Contracting Officers ("COs"), government officials employed by the Department of Defense ("DoD"), including DSCP, and the Department of Justice ("DoJ") conspired and acted in concert to intentionally deprive PWC of its rights under Contract No. SPM300-05-D-3128 (the "Contract" or the "PV2 Contract"), breaching the Contract's express and implied terms, and violating regulatory duties. In particular, DSCP was obligated to periodically fairly and objectively evaluate PWC's performance of the Contract. Based on those objective evaluations, PWC could receive additional payments in the form of higher distribution prices or fees. Rather than fairly and objectively evaluating PWC's performance, the COs, at the direction of DoJ officials and others, never issued any objectively honest evaluations, nor

authorized any additional payments. Had DoJ officials and others not interfered with PWC's contractual rights, and had the COs fulfilled their independent contractual and regulatory duties, DSCP would have issued evaluations entitling PWC to nearly $160 million in additional distribution fee payments. In this Appeal, PWC seeks the $158,979,385.06 it is owed in additional distribution fee payments, plus interest.

(Compl. at 1-2)

19. PWC's complaint repeatedly alleges elsewhere that DOJ interfered with DSCP's administration of the PV2 Contract: PWC alleges that DSCP's failure to properly evaluate PWC for a PBDF under the PV2 Contract was the direct result of the interference of DOJ officials with routine government contract administration (compl. ¶ 43); that a senior DOJ official increasingly intruded into DSCP's day-to-day operations of the PV2 Contract (compl. ¶ 53); and that DSCP officials were aware that they were not fulfilling their contractual obligation and the reason DSCP did not evaluate PWC for PBDFs was due to the DOJ official's direction (compl. ¶ 94).

20. PWC's complaint in ASBCA No. 58078 sets out two counts: Count I seeks relief based on "BREACH OF CONTRACT." PWC contends that "[t]he Contract required DSCP to evaluate PWC every six months for the purpose of determining whether PWC was entitled to the PBDF" (compl. ¶ 136), and "DSCP has failed to comply with its contractual obligations because of the existence of a DoJ investigation, and the active interference of DoJ officials" (compl. ¶ 138). Count II seeks relief based on DSCP's alleged "BREACH OF THE IMPLIED DUTIES OF COOPERATION, NON-INTERFERENCE WITH WORK, AND GOOD FAITH AND FAIR DEALING." PWC contends that DSCP breached the contract by "(1) failing to fulfill its contractual duties; (2) interfering with PWC's performance; and (3) conspiring to deprive PWC of its ability to reap the full benefits of the Contract" (compl. ¶ 148).

Board Proceedings in ASBCA No. 58078

21. The Board docketed PWC's 13 April 2013 appeal as ASBCA No. 58078 on the basis that the CO had failed to issue a decision on PWC's $158 million claim. On 11 May 2012, DSCP moved to dismiss the appeal (first mot. to dismiss). It made two arguments: First, DSCP argued that the CO's 14 December 2011 letter stating that she "expect[s] to issue a final decision on the claim on or before Friday, June 8, 2012," was in compliance with 41 U.S.C. § 7103(f)(2)(B) because she "pinpointed a particular date within which a decision would be issued" (first mot. to dismiss at 16-17). Second, DSCP argues that PWC's appeal was premature and the CO's failure to issue a final decision was reasonable so long as the civil *qui tam* and the criminal cases were pending in the District Court (*id.* at 6, 17-18).

7

22. In our decision issued on 12 November 2013, we rejected both arguments. We held the CO's qualified commitment to issue her decision on 8 June 2012 conditioned upon the District Court rendering a decision on whether PWC committed fraud did not comply with the requirement of 41 U.S.C. § 7103(f)(2)(B) and established case law. We held also that despite the criminal and civil fraud cases pending before the District Court, we have jurisdiction to interpret the PBDF clause and to determine what adjustments, if any, PWC was entitled to under that clause. We said that, contrary to the established case law for suspension or dismissal of a case pending the resolution of civil and criminal cases in court, "the DOJ has not asked that Board adjudication...be suspended or dismissed...pending resolution of the fraud cases in the District Court. Nor has the DOJ or DSCP shown that Board adjudication of the contract rights of the parties will interfere or prejudice the criminal and civil actions in the District Court." *PWC*, 13 BCA ¶ 35,460 at 173,897.

PWC's Discovery in the Board Case

23. Shortly after the Board issued its decision on jurisdiction in ASBCA No. 58078, PWC's counsel[3] before the Board served DSCP with discovery requests (mot. to dismiss, tabs 4, 5). In reviewing PWC's discovery requests, we find numerous requests seeking information relating to PWC's prosecutorial misconduct defense in the District Court. For example, a number of PWC's discovery requests seek information relating to (1) communications between DoD agencies (DLA, DSCP, DCIS, OIG, CENTCOM) and DOJ (USAO, FBI) concerning the evaluations of PWC, the CPAR process, or PBDFs (mot. to dismiss, tab 4 at 9, interrogatory no. 21); (2) DSCP's employees' expressions of concern over alleged involvement or interference by DoD and DOJ in the interpretation, administration, and performance of the PV Contracts (*id.* at 10, interrogatory no. 25); (3) the identification of all individuals involved in the CO's decision not to issue any CPARs for the PV2 Contract (*id.* at 14, interrogatory no. 53); and (4) communications and meetings between DoD and DOJ leading up to DSCP's decision not to complete any CPARs for the PV2 Contract (*id.* at 14-17, interrogatory nos. 54, 60, 62, 68).

24. Other interrogatories broadly included subject matters (distribution fees, discounts and rebates) in the Superseding Indictment. For example, PWC's discovery requests seek (1) communications between DoD and DOJ regarding the "pricing, delivered cost, distribution fees, discounts, rebates, sheltered income, case breaking, or suppliers" (mot. to dismiss, tab 4 at 17, interrogatory no. 69); and (2) identification of any investigation of other PV Contractors by DoD and DOJ "regarding pricing, delivered cost, distribution fees, discounts, rebates, sheltered income, case breaking, or suppliers of

---

[3] At the Board, PWC is represented by Vinson & Elkins LLP in Washington, DC.

local market ready items, fresh fruits and vegetables, bakery items, or dairy products" (*id.* at 21, interrogatory no. 91).

### Recent Filings with the District Court and the Board

25. Believing that the Board's decision supports their position, PWC's defense attorneys in the District Court filed a supplemental brief on 4 December 2013 in support of its 2012 motion to dismiss the indictment for prosecutorial misconduct (mot. to dismiss, tab 6). As reflected in its supplemental brief, PWC read the Board's 12 November 2013 decision on jurisdiction as strong support of its argument that the prosecutors committed misconduct in pressuring DSCP COs to downgrade its PV Bridge Contract CPAR and to issue no CPARs under the PV2 Contract (*id.* at 2). PWC viewed the Board's decision on jurisdiction in the context of "due process" violations in the criminal case (*id.* at 5-7).

26. On 7 January 2014, DOJ moved the District Court seeking an expedited consideration of its earlier motion to enjoin PWC from using civil discovery at the Board to gather evidence for the criminal case and to suppress any evidence so derived (mot. to dismiss, tab 7). By way of background, DOJ's initial motion to enjoin PWC from using civil discovery to gather evidence for the criminal case was filed in the District Court in June 2012. That motion stemmed from the deposition of CO Ford in ASBCA No. 56022 – a case unrelated to the criminal or civil fraud cases pending before the District Court – in March 2012. Contrary to the parties' prior agreement to stay clear of the civil and criminal fraud cases before the District Court, it was discovered that PWC's counsel at the Board was live-streaming CO Ford's deposition to PWC's criminal defense counsel. It remains unclear whether PWC's defense counsel participated in the deposition electronically. *See The Public Warehousing Company*, ASBCA No. 56022, 13 BCA ¶ 35,201. In the Board's subsequent ruling on certain questions posed but left unanswered by CO Ford at the deposition, the Board provided the following general ruling, among others, in its Discovery Order No. 1 on 7 June 2012:

> 4. Given the criminal and civil fraud cases pending before the District Court in Atlanta, and given the prosecutorial misconduct case before that Court, any inquiry which encroaches or appear[s] to encroach on the issues raised in those cases, are unnecessary and counterproductive for purposes of proceeding with ASBCA No. 56022.

27. In a letter dated 15 January 2014 to DSCP counsel of record in the Board case, the United States Attorney for the Northern District of Georgia wrote that in reviewing PWC's discovery requests in the Board case she was concerned that PWC "will use the proceedings before the Armed Service[s] Board of Contract Appeals...to further its aims in the criminal matter, and that further civil discovery in ASBCA

No. 58078 will compromise the ongoing criminal prosecution." The U.S. Attorney asked DLA to seek a Rule 30 dismissal without prejudice in ASBCA No. 58078 "in light of the ongoing criminal matter or, in the alternative, a stay pending the resolution of the criminal matter." (Mot. to dismiss, tab 1 at 1)

28. The U.S. Attorney's letter points out that PWC's complaint in the Board case as well as the discovery recently filed show that PWC seeks to litigate before the Board the same issues currently pending in the District Court: PWC's motion to dismiss the indictment alleges that DOJ committed misconduct by pressuring DSCP to change its evaluation of PWC, and to refrain from performing CPAR evaluations to preclude PWC from receiving distribution fees it might otherwise be entitled to under the contract PBDF clause; and PWC's complaint in ASBCA No. 58078 alleges the same facts in support of its breach claims. The U.S. Attorney points out that PWC even referred to documents the government produced in the criminal case in its complaint filed at the Board. (Mot. to dismiss, tab 1 at 4, ¶ 13)

29. The U.S. Attorney's letter points out also that PWC's discovery in ASBCA No. 58078 further supports overlapping issues in the criminal case: PWC had filed a Motion to Compel Production of Communications Between the Prosecution and DSCP/DLA in the criminal case arguing that the information is necessary to understand the internal and external influences experienced by DSCP contracting personnel in the administration of the PV Contracts; and PWC seeks the same discovery in ASBCA No. 58078. Since PWC's motion to compel is still pending before the District Court, the U.S. Attorney asserts that "PWC's discovery requests effectively would circumvent the District Court's consideration of substantially similar discovery requests." (Mot. to dismiss, tab 1 at 4-5, ¶¶ 19, 21)

30. In addition to the pending motion to dismiss for prosecutorial misconduct case PWC filed in defense of the criminal case, the U.S. Attorney points out that PWC also seeks to discover at the Board "the solicitation of the PV-II contract, the costs of the PV Contracts, and the interpretation of contract terms related to pricing, delivered costs, delivered fees, and discounts, [which] go to the heart of the fraud claims at issue in the criminal case." (Mot. to dismiss, tab 1 at 6, ¶ 26) The U.S. Attorney's letter states that in filing a supplemental brief in the District Court arguing that the Board decision on "contract and jurisdictional issues" supports its case on prosecutorial misconduct is further proof that PWC is using civil proceedings to bolster its defenses in the pending criminal case (*id.*, ¶ 28).

31. The U.S. Attorney's letter requests that the Board dismiss ASBCA No. 58078 pending resolution of the criminal case based on (1) the "indefinite resolution" of the motions before the District Court (i.e., PWC's motion for prosecutorial misconduct and its motion to compel discovery, and DOJ's motion to enjoin PWC from using civil discovery at the Board to gather evidence for the criminal case and to suppress evidence

so derived) and (2) "the inordinate length of time that may be required to resolve the criminal matter as a whole" (mot. to dismiss, tab 1 at 9, ¶ 45). In the alternative, the U.S. Attorney requests a stay of discovery in ASBCA No. 58078 "pending the resolution of the criminal matter" (*id.* at 10, ¶ 46).

32. Forwarding the U.S. Attorney's letter, DSCP on 17 January 2014 moved to dismiss ASBCA No. 58078 without prejudice pursuant to Rule 30, or in the alternative, to stay proceedings in ASBCA No. 58078 pending resolution of the criminal matter. Upon receipt of DSCP's motion, the Board by letter dated 23 January 2014 directed PWC's Board counsel to respond by 21 February 2014. Separately, the Board issued Discovery Order No. 1 staying discovery in ASBCA No. 58078, "effective immediately," pending a ruling on DSCP's present motion to dismiss.

## DECISION

We address first PWC's opposition to DSCP's current motion to dismiss based on Rule 30 which PWC refers to as DSCP's second motion to dismiss. PWC contends this second motion was strategically planned "as part of a scheme to delay the administration of justice" with successive motions (opp'n at 4, 5). PWC also contends that DSCP's current Rule 30 motion "is inextricably intertwined with the comity issue decided in the First Motion" (opp'n at 8).

We do not believe DSCP deliberately reserved its Rule 30 dismissal as a part of its litigation strategy to take a second shot at delaying proceedings. Although DSCP could have moved for a Rule 30 dismissal initially, we believe it simply focused on other issues and arguments. In our first decision, we did not extensively discuss the comity issue for two reasons: First, as PWC observes, "DLA offered a less than compelling rendition of the comity argument" (opp'n at 8), stating simply that "the contracting officer should seek to avoid meddling in a matter before a United States District Court and avoid making a separate decision on whether PWC committed fraud" (first mot. to dismiss, gov't 20 July 2012 reply to app. opp'n at 9; *PWC*, 13 BCA ¶ 35,460 at 173,898). Second, contrary to the position it now takes, in its opposition to DSCP's first motion to dismiss, PWC took the position that DSCP's "entire comity argument on the so-called 'first-to-file' rule...simply does not apply to these proceedings," because "comity becomes relevant only when the courts are presented with the same lawsuit, not merely some overlapping issues" (first mot. to dismiss, app. opp'n at 15). PWC never argued what it now argues – that "Rule 30...essentially enshrines the doctrine of comity" (opp'n at 8). It is more likely that DSCP's current motion to dismiss is in response to the reason the Board gave for denying DSCP's first motion to dismiss: "We have received no indication from the DOJ that for the CO to fulfill her contractual obligations under the terms of the PV2 Contract would interfere or prejudice the ongoing civil and criminal cases before the District Court." *PWC*, 13 BCA ¶ 35,460 at 173,898.

11

We address next DSCP's motion to dismiss pursuant to Rule 30. The Constitution does not require a stay of civil proceedings pending the outcome of criminal proceedings. *Afro-Lecon, Inc. v. United States*, 820 F.2d 1198, 1202 (Fed. Cir. 1987); *Securities and Exchange Commission v. Dresser Industries, Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980), *cert. denied*, 449 U.S. 993 (1980). Courts have long recognized, however, that there is "a clear-cut distinction between private interests in civil litigation and the public interest in a criminal prosecution, between a civil trial and a criminal trial, and between the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure." *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962), *cert. denied*, 371 U.S. 955 (1963); *United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970). In civil cases, for example, depositions may be taken as a matter of right by notice without permission of the court. FED. R. CIV. P. 30. In criminal cases, depositions can only be taken by order of the court, and on notice to all parties and under "exceptional situations." FED. R. CRIM. P. 15. Moreover, except as permitted, the FED. R. CRIM. P. 16(a)(2) does not authorize the discovery of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case.

Recognizing the rules governing criminal discovery are far more restrictive than those provided in the Federal Rules of Civil Procedure, "[a] litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery" in obtaining evidence that litigant would not otherwise be entitled to for use in a criminal suit. *Campbell*, 307 F.2d at 487. Courts are given discretion to stay civil proceedings, postpone civil discovery, or impose protective orders and conditions when the interests of justice so require. *Dresser Industries*, 628 F.2d at 1375. The exercise of discretion must be made in the light of the particular circumstances of the case. *Id.*

As the situation now stands, there are parallel proceedings at the Board and at the District Court: At the Board, the central issue for resolution in ASBCA No. 58078 is whether DSCP breached the PV2 Contract in refusing to issue CPAR evaluations without which PWC's distribution fees could not be adjusted as provided under the PBDF clause. At the District Court, in moving to dismiss the indictment on the basis of prosecutorial misconduct, PWC has put in issue whether government attorneys and agents committed misconduct by pressuring the CO and other DSCP personnel to refrain from performing the contractually mandated performance evaluations (CPARs) to deprive additional distribution fees PWC arguably would receive. Thus, even though PWC seeks different relief at the Board (breach damages) and at the District Court (dismissal of the indictment for prosecutorial misconduct), establishing the underlying cause or causes of the alleged

12

breach and the alleged prosecutorial misconduct will necessarily involve the use of the same witnesses and documents.[4]

Recent discovery requests filed by PWC in ASBCA No. 58078 confirm that its breach claim at the Board and its prosecutorial misconduct defense at the District Court are inseparable: In ASBCA No. 58078, PWC requests information and documents relating to (1) communications between DoD agencies (DLA, DSCP, DCIS, OIG, CENTCOM) and DOJ (USAO, FBI) concerning the evaluations of PWC, the CPAR process, or PBDFs; (2) DSCP's employees' expressions of concern over alleged involvement or interference by DoD and DOJ in the interpretation, administration and performance of the PV Contracts; (3) the identification of all individuals involved in the CO's decision not to issue any CPARs for the PV2 Contract; and (4) communications and meetings between DoD and DOJ leading up to DSCP's decision not to complete any CPARs for the PV2 Contract (SOF ¶ 23). Additionally, we are told that PWC has filed a Motion to Compel Production of Communications Between the Prosecution and DSCP/DLA. With that motion still pending in the District Court, we agree with the U.S. Attorney that PWC's discovery requests at the Board, if allowed, "effectively would circumvent the District Court's consideration of substantially similar discovery requests." (SOF ¶ 29)

That PWC's criminal defense attorneys would read the Board's decision on jurisdiction as support for "due process" violations and file a supplemental brief to its motion to dismiss for prosecutorial misconduct in the District Court, further highlights the overlapping nature of the cases at the Board and at the District Court.

Leaving aside its prosecutorial misconduct defense in the District Court, PWC's recent discovery requests at the Board broadly inquired into areas relating to pricing, delivered costs, distribution fees, discounts, rebates and local market ready item (LMRI) suppliers under the PV Contracts (SOF ¶ 24). These matters coincide with the matters that are the bases of the six-count indictment (SOF ¶¶ 8-12).

Conceding they are interrelated, PWC argues that the District Court cases can proceed in that court focusing on the legal impact of the conduct of DOJ prosecutors, and the Board case can proceed focusing on the legal impact of the conduct of DLA contracting officials (opp'n at 14). We have considered the imposition of protective orders as a way forward in ASBCA No. 58078. Since DSCP attorneys are not totally familiar with the prosecutors' case, we are persuaded that it would impose an impossible burden on DSCP attorneys to protect DOJ's interests in Board proceedings. Furthermore, with PWC pushing the envelope of permissible discovery, and with DOJ and DSCP

---

[4] With the criminal case taking center stage, we need not consider the consequences of proceeding at the Board in relation to the District Court *qui tam* case which was administratively closed (SOF ¶ 13).

13

trying to contain discovery at every turn, navigating the fine line between what goes on at the Board and what goes on in the District Court will be extraordinarily onerous, if not outright impossible. We believe the risks of going forward under a protective order far outweigh any benefits that can be reaped.

In addition to potentially compromising the criminal case in the District Court based on overlapping issues, the U.S. Attorney requests that in light of the indefinite resolution of various motions still pending in the District Court – PWC's motion for prosecutorial misconduct and its motion to compel discovery, and DOJ's motion to enjoin PWC from using civil discovery before the Board to gather evidence for the criminal case – and the inordinate length of time that may be required to resolve the criminal matter as a whole, that ASBCA No. 58078 be dismissed without prejudice pursuant to Board Rule 30, and in the alternative, discovery in ASBCA No. 58078 be stayed pending the resolution of the criminal matter (mot. to dismiss, tab 1 at 9-10, ¶¶ 45, 46).

Board Rule 30 allows us to suspend proceedings for good cause. The Rule also states that the Board may, at its discretion dismiss appeals without prejudice where the suspension has continued or may continue for an inordinate length of time. Dismissal without prejudice under Rule 30 would be deemed to be with prejudice unless either party or the Board acts within three years to reinstate the appeal.

The authority of the ASBCA Judge "is no different from that of federal trial courts which, by virtue of their case management authority, are given broad discretion to manage the litigation on their dockets." *Metadure Corp. v. United States*, 6 Cl. Ct. 61, 67 (1984); *Turbomach*, ASBCA No. 30799, 87-2 BCA ¶ 19,756 at 99,953 ("this Board has the inherent power to control the discovery process in appeals before it").

The Fifth Circuit Court of Appeals has said: "Administrative policy gives priority to the public interest in law enforcement. This seems so necessary and wise that a trial judge should give substantial weight to it in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities." *Campbell*, 307 F.2d at 487; *Palm Springs General Trading and Contracting Establishment*, ASBCA No. 56290 *et al.*, 10-1 BCA ¶ 34,406 at 169,867 (we dismissed the three appeals without prejudice because to proceed with overlapping issues would interfere with the District Court case and would be counterproductive in terms of time and effort). The criminal case in the District Court does not end with obtaining the indictment more than four years ago or the exchange of over 27 million pages of documents (opp'n at 2). We know there are pending motions before the court covering substantially similar issues before the Board. And, from where we sit, we can only assume that the criminal case is proceeding to trial. Moreover, the speed of resolution of the criminal case is entirely beyond our control. This factor also weighs in favor of dismissing ASBCA No. 58078 without prejudice. *WEDJ/Three C's, Inc.*, ASBCA

14

Nos. 53747, 53756, 05-2 BCA ¶ 33,070 at 163,898 (Rule 30 dismissal warranted when course of events not within the Board's control and may continue for an indefinite length of time.).

Given the public policy granting priority to the public interest in law enforcement, the overlapping nature of the issues in ASBCA No. 58078 and those in the criminal case in the District Court and the potential for compromising DOJ's criminal prosecution and possibly interfering with the District Court's rulings and decisions in being required to go forward, we conclude that DOJ and DSCP have made out a clear case for dismissal without prejudice under Rule 30.

## CONCLUSION

For the reasons stated, ASBCA No. 58078 is dismissed without prejudice pursuant to Rule 30. Either party has three years from the date of this decision to move to reinstate this appeal or this dismissal will be deemed to be with prejudice.

Dated: 10 April 2014

PETER D. TING
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

15

I certify that the foregoing is a true copy of the Order of Dismissal of the Armed Services Board of Contract Appeals in ASBCA No. 58078, Appeal of Public Warehousing Company K.S.C., rendered in conformance with the Board's Charter.

Dated:

<div style="margin-left: 50%;">

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

</div>

16