# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of -- | ) | |
| | ) | |
| Public Warehousing Company K.S.C. | ) | ASBCA No. 59020 |
| | ) | |
| Under Contract Nos. SP0300-03-D-3061 | ) | |
| SPM300-05-D-3119 | ) | |
| SPM300-05-D-3128 | ) | |

APPEARANCES FOR THE APPELLANT:    Michael R. Charness, Esq.
Jamie F. Tabb, Esq.
Ralph C. Mayrell, Esq.
  Vinson & Elkins LLP
  Washington, DC

Richard Marmaro, Esq.
  Skadden, Arps, Slate, Meagher &
  Flom LLP
  Los Angeles, CA

Kristin N. Tahler, Esq.
  Quinn Emanuel Urquhart &
  Sullivan, LLP
  Los Angeles, CA

APPEARANCES FOR THE GOVERNMENT:    Daniel K. Poling, Esq.
  DLA Chief Trial Attorney
Steven C. Herrera, Esq.
Keith J. Feigenbaum, Esq.
Kari L. Scheck, Esq.
  Trial Attorneys
  DLA Troop Support
  Philadelphia, PA

## OPINION BY ADMINISTRATIVE JUDGE THRASHER
## ON THE GOVERNMENT'S MOTION TO DISMISS OR ALTERNATIVELY
## STAY THIS APPEAL

This appeal arises from three Prime Vendor contracts between appellant, Public Warehousing Company, K.S.C. (PWC), and the Defense Supply Center Philadelphia, since renamed DLA Troop Support, a component of the Defense

Logistics Agency (DLA). PWC appeals from the denial of its 28 November 2011 certified claim, as revised by its 26 February 2013 letter, seeking $4,605,594.53 in interest penalties allegedly due pursuant to the Prompt Payment Act, as amended, 31 U.S.C. §§ 3901-3907, and the terms of the captioned contracts. The DLA moves to dismiss this appeal without prejudice under Armed Services Board of Contract Appeals (ASBCA) Rule 18 pending resolution of the ongoing criminal proceedings involving PWC, in the U.S. District Court for the Northern District of Georgia (District Court). In the alternative, DLA requests a stay of this appeal. DLA asserts the affirmative defenses of fraud in the inducement and first material breach based on the same conduct at issue in PWC's criminal proceeding currently being litigated in the District Court.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. DLA awarded Contract No. SP0300-03-D-3061 (PVI) to PWC on 30 May 2003 (R4, tab 20). DLA also awarded Contract Nos. SPM300-05-D-3119 (Bridge) and SPM300-05-D-3128 (PVII) to PWC on 17 February 2005 and 7 July 2005, respectively. The contracts were Prime Vendor subsistence contracts to provide food to U.S. military personnel and other authorized customers in Iraq and Kuwait. (R4, tabs 30, 41)

2. PWC was paid under the contract by submitting invoices to DLA either through the Electronic Data Interchange (EDI) system or manually "offline".[1] The contracts (and the solicitations incorporated by reference into the contracts) included terms stating that payment would be made in accordance with the Prompt Payment Act (PPA) (R4, tab 20 at 16, tab 36 at 79).

3. PWC filed a certified claim on 28 November 2011, asserting entitlement to $5,381,777.62 for late payment interest penalties due under the PPA related to invoices submitted under the three contracts (R4, tab 1). The claim included two spreadsheets detailing the interest penalties alleged due on thousands[2] of invoices submitted for payment (app. supp. R4, tab 49). The amount claimed was later revised downward on 26 February 2013 to $4,605,594.53 (R4, tab 7A at 1-4). The contracting officer issued her final decision on 1 November 2013, denying the claim (R4, tab 13). PWC filed its complaint with the Board on 20 December 2013, and DLA filed its answer on 21 March 2014. The government moved to partially dismiss this appeal for lack of jurisdiction on 30 June 2014, but later moved for summary judgment on 4 March 2015. The Board denied both motions on 2 May

---

[1] Most offline or manual invoices appear to have been submitted by email.
[2] 389 pages of EDI invoices totaling $2,059,701.93 and 30 pages of offline invoices totaling $5,381,777.62.

2016. *Public Warehousing Company, K.S.C.*, ASBCA No. 59020, 16-1 BCA ¶ 36,366.

*Discovery*

4. During a conference call on 8 June 2016, the parties discussed the status of DLA's review of the disputed invoices. DLA represented it had only reviewed a small number of the invoices at issue and could not provide a date certain for completing its review. As a result, the Board ordered DLA to identify the invoices it had already reviewed and to provide the Board with an estimate of how long it will take to review the remaining invoices, identify any discrepancies and inform PWC of the specific basis for any discrepancies.

5. On 22 July 2016, DLA filed an amended answer with the Board, asserting affirmative defenses including fraud in the inducement, first material breach, and payment.[3] DLA's fraud in the inducement affirmative defense is based on PWC's alleged false market basket pricing for its proposal for PVII (amended answer at 38-39, ¶¶ 8-16). DLA's first material breach affirmative defense is based on several different alleged actions by PWC (*id.* at 40-43, ¶¶ 17-51). DLA asserts PWC materially breached the contracts by systemically overcharging DLA by failing to purchase a less expensive product than it was instructed to purchase because the vendor did not offer PWC a prompt-payment discount (*id.* at 40-41, ¶¶ 17-27). DLA also asserts that PWC materially breached the contracts by manipulating and inflating the delivered price of its products under the contracts by concealing their distribution fees and by urging vendors to use interchange port services (*id.* at 41-42, ¶¶ 28-39). DLA further asserted that PWC materially breached the contracts by failing to pass on rebates and discounts received for purchase of Local Market Ready (LMR) items and Fresh Fruits and Vegetables (FF&V) from The Sultan Center (*id.* at 42-43, ¶¶ 40-51).

6. On 29 June 2016 the DLA provided PWC with a letter describing examples of invoice discrepancies purporting to comply with the Board's order of 8 June 2016. On 12 July 2016 PWC submitted a letter to the Board asserting DLA's response failed to comply with the Board's order and requested the Board order DLA to comply with its order. In response, the Board initiated a conference call with the parties on 25 July 2016. During that call, the Board agreed with PWC that DLA failed to comply with its previous order. DLA explained that: it was having a difficult time locating and examining the invoices; that there are thousands of invoices; the invoices have been archived; and it takes approximately two to three

---

[3] DLA also asserted affirmative defenses of laches (amended answer at 37-38, ¶¶ 1-5) and statute of limitations (amended answer at 38, ¶¶ 6-7).

hours to pull the information from their system on one invoice. Therefore, DLA stated that individual review of each invoice will require tremendous expenditure of resources from each party.

7. The government also stated during the conference call that it planned to file a motion to dismiss this appeal without prejudice because the affirmative defenses in its amended answer overlap with an ongoing criminal proceeding against DLA. The Board asked DLA when it became aware of the criminal proceeding and was told 2009.

8. The parties also addressed the issue of reviewing the invoices during the call. PWC stated that the spreadsheet used in support of its claim represented the EDI invoices and was derived from its electronic system for invoicing DLA. The contract required this system to interface with the government's system for filing EDI invoices. PWC also clarified that its estimate of 32,000 individual invoices, (previously discussed in a conference call), more realistically is about 11,400 ESI invoices and 1,000 offline invoices.

9. On 20 September 2016, DLA filed a report of its invoice data review in accordance with the Board's scheduling order. Only 328 of 11,430 EDI invoices had been reviewed as of the date of the report. DLA's review alleges it identified discrepancies including, missing interest payment data, incomplete invoice data or incorrect accrual dates and "hundreds of invoices" barred by the statute of limitations. DLA did not review any of the "offline" invoices given its position that the contract required invoices be submitted through the EDI system. The 20 September report was supplemented on 28 September 2016 with an attached list of invoices (2,447 EDI and 124 offline) with interest payments that DLA alleges do not match the spreadsheet list submitted by PWC.

10. On 23 November 2016, PWC filed a motion for sanctions in the form of adverse inferences and exclusion of evidence, a motion to compel, and a request for expedited briefing. Because the discovery sought is necessarily an issue in deciding this motion, the Board stayed discovery in this appeal until 13 January 2017, or until the date the Board issues its decision on DLA's motion, whichever is earlier.

*Fraud Investigation and Prosecution of PWC*

11. DOJ conducted civil and criminal fraud investigations concerning PWC's performance under the three contracts. A relator filed a civil *qui tam* False Claims Act case against PWC in the District Court in 2005 alleging PWC committed fraud under the contracts at issue in this appeal. The government intervened in that case and filed its own complaint in January 2011. On 9 November 2009, PWC was

4

indicted in the District Court. The six-count indictment (original indictment) charged PWC with conspiracy to defraud the United States, conspiracy to commit major fraud, major fraud, wire fraud, and abetting wire fraud. Both the criminal and civil fraud cases against PWC are currently pending.

12. A superseding indictment (superseding indictment) was issued on 9 February 2010, which made largely the same allegations as the original indictment (gov't mot., ex. 3). The government's theories include allegations that PWC misrepresented the expected prices of a market basket of goods in submitting its proposal for the contract on the PVII contract and that it overcharged the government in a variety of ways, including: the use of costlier vendors that provided PWC a prompt payment discount; improperly charging the government for warehousing and distribution costs; inflating prices from distributors and vendors; improperly retaining rebates, allowances and discounts; and reducing the pack size of products to increase distribution fees on all three contracts (*id.*).

*Letter from the U.S. Attorney for the Northern District of Georgia*

13. The U.S. Attorney for the Northern District of Georgia, John Horn, submitted a letter to DLA, dated 12 August 2016, requesting that DLA seek that ASBCA No. 59020 be dismissed without prejudice, or, in the alternative, stayed (gov't mot., ex. 1 at 1). The letter states that the U.S. Attorney's Office reviewed DLA's amended answer in ASBCA No. 59020 and that "there is substantial overlap between the affirmative defenses alleged in the answer and the ongoing criminal prosecution of Public Warehousing Company in the United States District Court for the Northern District of Georgia" (*id.*).

14. The U.S. Attorney states that "[t]he affirmative defenses included in DLA's July 22, 2016 amended answer in ASBCA No. 59020 encompass identical issues as the pending criminal case in the Northern District of Georgia" (gov't mot. at 3 of 9, ¶ 7). He concludes that "[l]itigation on those affirmative defenses in ASBCA No. 59020 will thus involve the issues pending in the ongoing criminal proceeding" (*id.*). The U.S. Attorney compares and contrasts the affirmative defenses with the allegations in the indictment, and concludes that they "almost identically track" with the indictment (*id.* at 3-4 of 9, ¶¶ 9-12). The U.S. Attorney's letter also states that "there is potential overlap of the substantive issues in ASBCA No. 59020 and the criminal proceedings," because of the potential for the invoices at issue in ASBCA No. 59020 to be implicated in the criminal proceedings (*id.* at 4 of 9, ¶ 13).

15. The U.S. Attorney also states that "[i]f the case is not dismissed without prejudice or stayed, PWC will have grounds to request discovery (including

interrogatories, depositions, and requests for documents) in ASBCA No. 59020 concerning DLA's affirmative defenses" (gov't mot, at 5 of 9, ¶ 16). The U.S. Attorney also notes that "PWC has a history of using ASBCA proceedings to affect the criminal case," and identifies three other appeals where "PWC has somehow sought to use the proceedings before the Board to gain evidence or other further knowledge of the criminal proceedings" (*id.* at 5 of 9, ¶ 17).

16. On 28 September 2016, the District Court's U.S. Magistrate Judge issued a non-final report and recommendation to the court on PWC's motion for a change in venue in the criminal case (gov't reply br., ex. 1, U.S. Magistrate Judge's non-final report and recommendation on defendant's venue motion, Sept. 28, 2016). In that report the Magistrate addressed the magnitude of undertaking the prosecution and opined on a trial schedule, stating:

> The government indicates that it has produced twenty-four million documents to PWC in discovery (citation omitted). PWC states that trial is expected to last at least three months, (citation omitted), and the Government repeatedly states that it expects the trial to be "lengthy" (citation omitted). Moreover, while the undersigned appreciates the Government's optimism in presuming that trial is imminent, (citation omitted), and the Court is now in a position to roll out rulings on dispositive and non-dispositive motions, but trial will not likely occur until next year.

(Gov't reply br., ex. 1 at 40-41)

## DECISION

The Board has inherent authority and discretion to manage its docket and to stay, suspend or dismiss without prejudice in appropriate circumstances weighing the competing interests of the parties against any prejudice. *Kellogg Brown & Root Services, Inc.*, ASBCA Nos. 57530, 58161, 13 BCA ¶ 35,243 at 173,022. However, exercise of such authority "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Public Warehousing Company, K.S.C.*, ASBCA No. 56116, 08-1 BCA ¶ 33,787 at 167,226 (citing *Landis v. North American Co.*, 299 U.S. 248, 254-255 (1936)); *Afro-Lecon, Inc. v. United States*, 820 F.2d 1198 (Fed. Cir. 1987). In exercising our discretion, we also recognize that, under the Contract Disputes Act (CDA), 41 U.S.C. §§ 7101-7109, "a contractor is entitled to have a properly asserted appeal litigated before, and decided by, the Board." *Kellogg Brown & Root Services, Inc.*, ASBCA Nos. 56358, 57151, 11-1

6

BCA ¶ 34,614 at 170,603 (citing *TRW, Inc.*, ASBCA Nos. 51172, 51530, 99-2 BCA ¶ 30,407 at 150,332), and that we have a statutory mandate to provide "informal, expeditious, and inexpensive resolution" of contract disputes. 41 U.S.C. § 7105(g)(1).

We normally consider four factors in exercising our discretion under these circumstances summarized as: (1) whether the facts, issues, and witnesses in both proceedings are substantially similar; (2) whether the on-going investigation or litigation would be compromised by going forward with the case before us; (3) the extent to which the proposed stay could harm the non-moving party; and (4) whether the duration of the requested stay is reasonable. *Public Warehousing*, 08-1 BCA ¶ 33,787 at 167,227; *Kellogg Brown & Root*, 11-1 BCA ¶ 34,614 at 170,603. Where "there is even a fair possibility" that a stay will work damage to the non-movant, the government must demonstrate a "clear case of hardship or inequity in being required to go forward." *Landis v. North American Co.*, 299 U.S. 248, 255 (1936). We also ask whether consideration of "[j]udicial efficiency counsels granting the stay." *Kaman Precision Products, Inc. formerly dba Kaman Dayron, Inc.*, ASBCA No. 56305 *et al.*, 10-2 BCA ¶ 34,499 at 170,153. Each factor will be examined in turn.

*(1) Whether the facts, issues, and witnesses in both proceedings are substantially similar*

In support of its motion, the government submits a letter from the U.S. Attorney requesting the government move to dismiss this appeal pending the outcome of the criminal case. The U.S. Attorney's letter contends the government's affirmative defenses "encompass identical issues as the pending criminal case" in the district court (SOF ¶ 14). Likewise, the government contends that, "[a] review of both DLA's amended answer and the criminal indictment reveal that the facts, issues, and witnesses are substantially similar, if not identical, in this appeal and the criminal proceeding" (gov't mot. at 11). This conduct, the government argues, is the same conduct alleged in count two of the superseding indictment (*id.* at 11-12).

The government further alleges that appellant materially breached the contracts by manipulating and inflating the delivered price of its products by demanding its vendors conceal their distribution fees in their prices and urged vendors to use interchange port services which appellant could then charge the government. Additionally, the government alleges that appellant failed to pass on rebates and discounts from The Sultan Center. These affirmative defense allegations describe conduct identical to those alleged in count two of the superseding indictment. (Gov't mot. at 12)

The government also contends some of the substantive issues raised in this appeal may potentially overlap with DOJ's criminal investigation. The government's amended answer alleges appellant acquire most of its LRM items and FF&V through the Sultan Center and appellant's claim includes interest on some of the invoices for payment of these items. The amended answer also alleges appellant submitted false market basket items and thus any interest on these items may also be subject to DOJ criminal investigation. Consequently, both the government and appellant will have to request discovery regarding these invoices and may have to call the same witnesses as the criminal proceeding. (Gov't mot. at 12-13)

Appellant does not dispute that the affirmative defenses and criminal proceeding will involve the same basic facts and witnesses.[4] However, appellant does contend the affirmative defenses (issues) are contractual and narrower than the criminal claims (app. opp'n at 13). In support of this contention, appellant notes that all but one of the government's affirmative defenses require only a determination of a material breach, not specific intent as required by the criminal statutes (*id.*). Similarly, the fraudulent inducement defense requires proof of "intent to induce action in reliance upon misrepresentation," but not intent to defraud (*id.*). Consequently, appellant contends the Board can decide this case, and the government's defenses, without ever deciding these issues or whether PWC violated these criminal statutes (*id.* at 14).

PWC also contends the PPA claims do not substantively overlap with the criminal case, stating:

> The fact that certain invoices in PWC's claim *may* include food or other items that are the focus of allegations in the criminal case, such "overlap" in no way deprives the Board of the ability to determine whether PPA interest accrued on such invoices, and such a determination by the Board would not interfere with the criminal proceedings.

(App. opp'n at 14-15)

---

[4] Additionally, appellant notes that the fraudulent inducement defense only applies to the PVII contract and would not justify dismissing the entire appeal (app. opp'n at 13).

8

Furthermore, PWC asserts that DLA's concern about overlap is entirely hypothetical, explaining:

> "Mere allegations," and the mere possibility of overlap with a criminal case, do not justify a stay. That is particularly true here, where the Government has had eleven years to finely hone its case, and it is well aware of what it believes are its supportable allegations.
> [Citations omitted]

(App. opp'n at 15)

We conclude that the facts, witnesses and issues in both proceedings are substantially similar. Although the issues do not precisely align in the two proceedings, they are substantially similar. Accordingly, we conclude there is sufficient similarity between the facts, issues and witnesses and that this factor weighs in favor of the government.

*(2) Whether the on-going investigation or litigation could be compromised by going forward with the case before us*

Both DLA and U.S. Attorney Horn contend PWC will gain an inappropriate advantage in the criminal proceedings if allowed to use the more liberal civil discovery process to circumvent the more limited criminal discovery in district court. Specifically, PWC will be able to request civil discovery and engage in motion practice on issues involved in the criminal proceeding, and DLA would also need to conduct discovery and motion practice on the same issues. The U.S. Attorney's letter emphasizes that if the appeal goes forward, the Board would "be compelled to hold a fact finding hearing regarding the affirmative defenses, and the Board would have to issue a decision regarding the various affirmative defenses asserted by DLA." In doing so, "the Board would be placed in the position of making factual and legal findings regarding the criminal case, including but not limited to whether PWC, in fact, committed fraud in the performance of or in the inducement of the contract." (Gov't mot., ex. 1 at 5 of 9, ¶ 16)

In support of its motion, DLA contends appellant has a history of attempting to use the Board's discovery process to obtain information for use in other forums:

> As far back as 2007, PWC filed an appeal and submitted discovery requests to obtain information at issue in the fraud investigation (that later led to its indictment). *See Public Warehousing Co., K.S.C.,* ASBCA No. 56116,

9

2008-1 BCA ¶ 33,787 at 167,229 (stating that it was "clear...that PWC's primary purpose in wishing to proceed with the appeal is to use the Board's decision to influence the direction of the on-going investigations, and to help its position in potential settlement discussions."). The Board ordered a six-month stay of proceedings in that appeal. *Id.* Ultimately, the appeal was dismissed without prejudice. *See Public Warehousing Co., K.S.C.,* ASBCA No. 56116, 2009-2 BCA ¶ 34,264 at 169,302.

PWC also clandestinely used a deposition in ASBCA Appeal No. 56022 in order to obtain information regarding the fraud case. *See Public Warehouse Company, Inc.,* ASBCA No. 56022, 12-1 BCA ¶ 35,201. In connection with that appeal, PWC's counsel had stated that his firm (Vinson & Elkins) works closely with PWC's criminal defense counsel on all of PWC's litigation, including the civil and criminal fraud cases and the ASBCA litigation. Ex. 1, ¶ 23.

Lastly, the Board has already dismissed a PWC appeal without prejudice based on the overlap of the issues involved in that appeal and the fraud cases. *See Public Warehousing Company, K.S.C.,* ASBCA No. 58078, 14-1 BCA ¶ 35,574. In dismissing PWC's appeal without prejudice, the Board noted PWC's tendency to "[push] the envelope of permissible discovery" and agreed with DLA that allowing the ASBCA appeal to proceed could compromise the criminal case. [Quote omitted] *Id.* at 174,342.

(Gov't mot. at 15-16)

Additionally, the government notes issues raised by the U.S. Attorney's letter that highlight the possibility of placing DLA counsel in the difficult position of trying to defend the government on the issues involved in DOJ's criminal proceeding, and that to proceed concurrently with the criminal proceeding would create economic waste (gov't mot. at 17). The U.S. Attorney's letter emphasizes that "'DLA counsel is not charged with prosecuting the criminal case, nor has the DOJ assigned DLA counsel with the task of safeguarding the DOJ's interests in a complex criminal matter involving multiple fraud schemes' thus 'DLA counsel will

be unprepared to protect the interests of DOJ and the Government regarding the criminal case'" (*id.*).

In response, PWC contends the DLA must "make out a clear case of hardship or inequity in being required to go forward," and that the government's motion is "notably devoid of specificity on this point" (app. opp'n at 15). Further, appellant contends the government's brief speaks only in generalities about the harm it will face and that "mere statements that the related criminal investigation will be prejudiced is insufficient without a clear showing why" (*id.* at 16 (citing *E-Systems, Inc.*, ASBCA No. 32033 *et al.*, 88-2 BCA ¶ 20,753 at 104,871)). PWC argues the government's reference to other cases to establish the adverse impact associated with going forward with the appeal are distinguishable and its conduct in prior Board appeals is not a basis for establishing proceedings in this case will prejudice the criminal case (*id.* at 16-18). PWC also contends, "[t]hose decisions to stay or dismiss were made years ago in the life of the criminal case, and relied on the hopeful belief that the criminal case would proceed in a timely fashion, which it certainly has not" (*id.* at 17) (citation omitted).

Additionally, PWC responds that the government's argument "that DLA's attorneys are unable to litigate the affirmative defenses [citation omitted] is both absurd and implausible" (app. opp'n at 18). The argument is absurd, appellant contends, because it was the government that pleaded the defenses to begin with, and consequently, if they are unable to litigate the defenses, they should not have asserted them. PWC contends that the argument is implausible because there is no prohibition on DOJ lawyers litigating before the Board. In further response, PWC contends that the majority of defenses relate to the first material breach allegations which are contractual issues, and well within the DLA lawyer's capabilities. (*Id.*)

Furthermore, PWC asserts the government has already made significant productions in the criminal case, PWC Status Report 4, PWC Criminal Matter (Oct. 18, 2012) [Dkt. 326] (Government produced 24 million pages of discovery) and contends whatever might have occurred in broad discovery in this appeal is now a moot issue (app. opp'n at 16).

We conclude there is a danger that discovery in this appeal will potentially compromise the ongoing criminal case. Notwithstanding PWC's argument that there has already been substantial discovery in the criminal case, discovery in this case related to the specific invoices has been limited and a continual issue of dispute between the parties (SOF ¶¶ 4-10). Discovery in this appeal will now expand from just the invoices into the affirmative defense facts, issues, and witnesses, which we have already concluded are substantially similar to those in the criminal case. Furthermore, contrary to PWC's arguments to the contrary, we conclude PWC's

11

prior actions at the Board in this regard are relevant to predicting possible future use of discovery in this appeal to circumvent the procedures in the criminal case, which further buttresses the government's argument for potential harm.

We conclude that this factor favors the government.

*(3) The extent to which the proposed stay could harm the non-moving party*

The government contends appellant will not be prejudiced by a dismissal without prejudice because it will not be harmed financially. Appellant will continue to accrue CDA interest and it is a large multi-billion-dollar company with financial assets to wait for payment (gov't mot. at 18). Appellant responds that the company's resources are inappropriate and irrelevant to the issue of whether its claim is prejudiced by the delay (app. opp'n at 20).

We take the government's point that appellant is a large company and will likely be able to financially sustain itself through this litigation but that does not mean appellant will not suffer some financial harm. However, in the context of this analysis, we do not believe any financial harm appellant will sustain would outweigh the potential harm to the government going forward.[5]

Additionally, the government argues:

> There is also little risk that the evidence required in this appeal will become stale or unavailable. The invoices at issue are already archived in the government's system because those invoices date from as early as 2004. Invoice data will remain archived following a dismissal, and this data is subject to [the government's] litigation hold so it will be available as long as that hold is in place.

(Gov't mot. at 18)

---

[5] We reject appellant's contention that the contractor's financial status is "inappropriate and irrelevant." In some instances it is an appropriate and relevant factor in accessing the potential financial harm that would result from a lengthy stay or dismissal. *See Suh'dutsing Technologies, LLC*, ASBCA No. 58760, 15 BCA ¶ 36,058 at 176,081 (small disadvantaged tribal business).

12

In response, appellant contends there is a very real possibility of the evidence becoming stale and the memories of witnesses fading, noting that it has been twelve years since the first invoice was billed and thirteen years since the contract began. Additionally, appellant points out that the government's argument is contradicted by its own complaints during the litigation of this appeal, stating:

> Moreover, the Board should reject the Government's assertion that "[t]here is also little risk that the evidence required in this appeal will become stale or unavailable" (Mot. 18), since *the Government itself* has complained that the passage of time has "made it extremely difficult and burdensome to locate relevant documents" and made it "extremely difficult to contact personnel...who would have knowledge of the events in PWC's claim." Am. Answer at 38, ¶ 4. The Government has also repeatedly claimed that its invoice archiving system is slow and inefficient. Aug. Call. Mem. 2. As technology, and the Government's own systems, continue to change, it is likely the ability of the Government to efficiently access that system will only continue to worsen. Unless the Government takes precautionary measures, it is entirely possible that the system will eventually become completely obsolete and inaccessible.

(App. opp'n at 19-20)

We agree with appellant that there is a real concern that evidence will become stale or lost with a prolonged stay or dismissal period. The identification and access to the invoices has been a continual issue in this appeal (SOF ¶¶ 4-10). We conclude the balancing of harm weighs in favor of appellant.

*(4) Is the duration of the requested stay is reasonable?*

The government does not propose a specific length for a stay. In fact, the government concedes there is "an indefinite time frame for resolution of the criminal matter" and, as a result, contends that a dismissal or stay is reasonable and "will best conserve the parties' time and resources while avoiding interference with ongoing criminal proceedings" (gov't mot. at 19 (citing ex. 1, ¶ 25)). However, the government also proposes the magistrate's report on appellant's venue motion (SOF ¶ 16) indicates a trial in the criminal case "will occur next year" (gov't reply br. at 1). We read the magistrate's statement to mean, at best, a trial might occur

13

next year. Not surprisingly, appellant disagrees that a dismissal or stay is appropriate contending that an indefinite delay is an abuse of discretion and a dismissal would have the same effect with the result being that memories will fade and evidence will become unavailable (app. opp'n at 21).

We agree with appellant that a dismissal or lengthy stay is not appropriate in this appeal. Consequently, the balancing of harm weighs in favor of appellant, against a dismissal or indefinite stay.

*Judicial Efficiency*

The U.S. Attorney also notes that having the cases proceed concurrently would "create economic waste as resources would simultaneously be expended in two forums looking into whether PWC committed fraud" (gov't mot. at 17 (citing ex. 1, ¶ 22)). While it does not require citation that this Board does not make fraud determinations, we agree judicial efficiency counsels in favor of a stay.

We believe after balancing the parties competing interests and assessing any potential prejudice to the parties that the best way to balance the parties' competing interests is to allow the criminal case to proceed and stay this appeal for a limited period of time. Additionally, we also conclude, on balance, judicial efficiency is best served by a stay of limited duration. Consequently, we stay this appeal for one year from the date of this decision. At the expiration of that year, the parties shall file a joint status report suggesting further proceedings. If the criminal case is resolved within the expiration period, the parties shall file a status report within two weeks of conclusion of the criminal case.

14

## CONCLUSION

The government's motion to dismiss is denied. The government's motion to stay is granted, for one year.[6]

Dated: 12 January 2017

JOHN J. THRASHER
Administrative Judge
Chairman
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I concur

MICHAEL N. O'CONNELL
Administrative Judge
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 59020, Appeal of Public Warehousing Company K.S.C., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

---

[6] Given our decision to stay this appeal, a decision on appellant's motion for sanctions in the form of adverse inferences and exclusion of evidence, motion to compel, and request for expedited briefing is stayed as well.