ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| Corinthian-WBCM, a Joint Venture | ) ASBCA No. 62379 |
| | ) |
| Under Contract No. N40080-15-C-0169 | ) |

APPEARANCES FOR THE APPELLANT:    Vivian Katsantonis, Esq.
      Jonathan R. Wright, Esq.
       Watt, Tieder, Hoffar & Fitzgerald, L.L.P.
       McLean, VA

APPEARANCES FOR THE GOVERNMENT:    Craig D. Jensen, Esq.
       Navy Chief Trial Attorney
      Sean P. Morgan, Esq.
      Devin A. Wolak, Esq.
      Anthony Hicks, Esq.
       Trial Attorneys

OPINION BY ADMINISTRATIVE JUDGE HERZFELD

Corinthian-WBCM, a Joint Venture (Corinthian), has appealed the deemed denial of a certified claim submitted to the United States Department of the Navy, Naval Facilities Engineering Command (Navy). The Navy has moved to compel production of certain documents. The Board resolved many of these issues during a March 23, 2021 status conference and in a subsequent March 24, 2021 Order. However, at the request of Corinthian, the Board permitted each party to submit a supplemental brief regarding the Navy's motion to compel Corinthian to produce the information Corinthian relied on in preparing its proposal. For the reasons stated below, the Board grants the Navy's request for this information.

STATEMENT OF FACTS FOR PURPOSES OF THE MOTION

On September 30, 2015, Corinthian and the Navy entered a contract for construction to widen Russell Road at Marine Corps Base Quantico, Virginia (Contract) (R4, tab 2 at 151 (Contract No. N40080-15-C-0169);[1] compl. ¶ 1). The Quantico

---

[1] Citations to the "R4" refer to the Rule 4 file submitted by the Navy on May 1, 2020, and citations to the "app. supp. R4" refer to Corinthian's Rule 4 supplemental file submitted on June 1, 2020. The Navy numbered pages as "GOV00000151" and Corinthian numbered pages as "JV_0002314" (for example), but we have dropped the prefix and extra zeros. We just cite the numeric page number.

road-widening project was phase three of a four-phased project and required Corinthian to include "the required signaling devices with camera equipment to control the direction of traffic and the relocation of existing utilities such as telecom, water, sewer, electric, and natural gas utility lines as necessary" (R4, tab 2 at 158; compl. ¶ 2).

During performance of the Contract, Corinthian submitted requests for equitable adjustment under the Changes and Differing Site Conditions clauses that were incorporated by reference in the Contract (R4, tab 2 at 174-75 (incorporating Federal Acquisition Regulation (FAR) 52.243-4, CHANGES (JUN 2007), and FAR 52.236-2, DIFFERING SITE CONDITIONS (APR 1984)); tabs 17, 19, 21, 23, 34, 36, 38).

The Changes clause permitted the Navy's contracting officer to

> by written order designated or indicated to be a change order, make changes in the work within the general scope of the contract, including changes— (1) In the specifications (including drawings and designs); (2) In the method or manner of performance of the work; (3) In the Government-furnished property or services; or (4) Directing acceleration in the performance of the work.

FAR 52.243-4(a)(1)-(4). The clause also states that:

> [a]ny other written or oral order (which, as used in this paragraph (b), includes direction, instruction, interpretation, or determination) from the Contracting Officer that causes a change shall be treated as a change order under this clause; [p]rovided, that the Contractor gives the Contracting Officer written notice stating (1) [t]he date, circumstances, and source of the order and (2) [t]hat the Contractor regards the order as a change order.

FAR 52.243-4(b). If any change under the Changes clause "causes an increase or decrease in the Contractor's cost of, or the time required for, the performance of any part of the work under this contract, whether or not changed by any such order, the Contracting Officer shall make an equitable adjustment and modify the contract in writing." FAR 52.243-4(d).

The Differing Site Conditions clause directed Corinthian to provide written notice to the Navy's contracting officer regarding "(1) [s]ubsurface or latent physical conditions at the site which differ materially from those indicated in this contract, or (2) [u]nknown physical conditions at the site, of an unusual nature, which differ materially from those ordinarily encountered and generally recognized as inhering in work of the character

2

provided for in the contract." FAR 52.236-2(a). The Contract also includes the Site Investigation and Conditions Affecting Work clause, which required Corinthian to take "steps reasonably necessary to ascertain the nature and location of the work, and that it has investigated and satisfied itself as to the general and local conditions which can affect the work or its cost" and acknowledge satisfaction "as to the character, quality, and quantity of surface and subsurface materials or obstacles to be encountered insofar as this information is reasonably ascertainable from an inspection of the site, including all exploratory work done by the Government, as well as from the drawings and specifications made a part of this contract" (R4, tab 2 at 174 (incorporating by reference FAR 52.236-3, Site Investigation and Conditions Affecting the Work (APR 1984))).

This appeal involves seven of Corinthian's requests for equitable adjustment that invoked, among other clauses, the Changes and Differing Site Conditions clauses. These seven requests for equitable adjustment (REA) make up Corinthian's certified claim on appeal. (R4, tab 39 at 4379) As pertinent to the motion to compel, we discuss two of these REAs.

For REA No. 3,[2] Corinthian requested an equitable adjustment for additional re-design costs and time to comply with Virginia's storm water regulations after the Navy's refusal to allow Corinthian to purchase nutrient credits from the Virginia Department of Environmental Quality (compl. ¶ 38, ex. B; R4, tab 19; app. supp. R4, tab 91, tabs 95-96 at 2518-37). Corinthian's REA No. 3 stated that Corinthian "based its proposed design upon the purchase of Nutrient Credits" from the Virginia Department of Environmental Quality (compl., ex. B; R4, tab 19 at 334; app. supp. R4, tab 96 at 2518; *see also* compl. ¶ 38 ("The JV planned its proposed design of the Project's stormwater management features with the intent to purchase nutrient credits to satisfy the VDEQ stormwater quality requirements for the Project, as permitted by VDEQ, the RFP and the FAR.")).

For REA No. 4, Corinthian requested an equitable adjustment based on a differing site condition, asserting that the water line at the east end of the project was located and configured differently from the as-built drawings provided by the Navy and the on-site conditions (compl. ¶¶ 44-52, ex. C; R4, tab 21 at 359; app. supp. R4, tab 82). Corinthian contends that this differing site condition resulted in Corinthian expending additional costs and time in adding 88 linear feet to the water line (compl. ¶ 46). In its correspondence with the Navy, Corinthian stated that "all the additional water line work required . . . was never considered in our bid" (R4, tab 21 at 362).

---

[2] Corinthian and the Navy refer to the REAs as REA Nos. 2-8 because that is the numbering system used by Corinthian in its claim and in this appeal. We will continue to refer to each aspect of Corinthian's claim using the REA number.

In the Navy's first set of requests for production of documents, number 19, the Navy requested that Corinthian "[p]roduce all support [worksheets (in native format), notes, historical data, takeoffs, vendor/subcontractor quotes, pricing guides or other documents] for CCI-WBCM's final proposed price" *(*app. opp'n to resp. mot. to compel, ex. 1 at 5 (Corinthian opp'n)). Corinthian objected to producing these documents based on relevance and to the extent the REAs included in the Rule 4 files constituted sufficiently responsive documents (id., ex. 2 at 11). The Navy moved to compel the production of these documents, among others, asserting that this document request sought Corinthian's bid information including pricing information (Navy's mot. to compel and request for extension of deadlines and hearing date, and appendix (Navy mot.) at 18; Navy's reply in support of its motion to compel and request for extension of deadlines and hearing date (Navy reply) at 5).

## DECISION

### I. Legal Standard

The Contract Disputes Act (CDA) permits a member of an agency board of contract appeals to "authorize depositions and discovery proceedings" for appeals before the board. 41 U.S.C. § 7105(f). Under Board Rule 8(c)(3), the "Board may upon motion order . . . [a] request for production, inspection, and copying of any documents, electronic or otherwise, or objects, not privileged, which reasonably may lead to the discovery of admissible evidence[.]"

"Although not binding on the Board, we also look to the Federal Rules of Civil Procedure (FED. R. CIV. P.), and decisions addressing those rules, for guidance in discovery disputes." *Sand Point Servs., LLC*, ASBCA Nos. 61819, 61820, 21-1 BCA ¶ 37,785 at 183,378 (citing *Thai Hai*, ASBCA No. 53375, 02-2 BCA ¶ 31,971 at 157,920; *Ingalls Shipbuilding Div. Litton Systems, Inc.*, ASBCA No. 17177, 73-2 BCA ¶ 10,205 at 48,094). FED. R. CIV. P. 34(a) permits a party to serve document requests on another party "within the scope of Rule 26(b)[.]" FED. R. CIV. P. 26(b) permits discovery "regarding any nonprivileged matter that is relevant to a party's claim or defense and proportional to the needs of the case[.]" FED. R. CIV. P. 26(b)(1); *see also Drone Technologies, Inc. v. Parrott S.A.*, 838 F.3d 1283, 1299 (Fed. Cir. 2016); *Sand Point Servs.*, 21-1 BCA ¶ 37,785 at 183,379 (discussing Rule 26(b)). In assessing proportionality, Rule 26(b) considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1).

"Relevancy for purposes of Rule 26 is broadly construed." *Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993). "The information

4

sought during discovery in a civil case need not be admissible at trial and need only be reasonably calculated to lead to discovery of admissible evidence." *Afro-Lecon, Inc. v. United States*, 820 F.2d 1198, 1203 (Fed. Cir. 1987). "However, the potential for discovery abuse is ever-present, and courts are authorized to limit discovery to that which is proper and warranted in the circumstances of the case." *Katz*, 984 F.2d at 424.

## II.  The Proposal Information Is Relevant And Should Be Produced

Corinthian must produce the information it relied on in preparing its proposal because the documents are relevant and proportional to its claims in this appeal. Corinthian's REAs include claims for changes and differing site conditions.  It is not unusual for a contractor's bid documents to be relevant and, in some circumstances, necessary in disputes involving changes and differing site conditions claims.

In particular, the Navy seeks Corinthian's bid documents, asserting that the documents are relevant and put into play because Corinthian's REAs necessarily depend on Corinthian's bid information (Navy reply at 5; Navy's supp. brief at 1-5 (Navy supp. resp.)).  Corinthian asserts that the documents are not relevant, arguing that none of the "REAs comprising the claim in this appeal involve the contents or amounts of the JV's bid" (app.'s brief concerning relevance of bid documents (app supp. resp.) at 4).

Corinthian points to several Federal district court decisions that concluded a party need not produce its bid information (app. supp. resp. at 3-4 (discussing *A&G Tree Serv., Inc. v. Tenn. Valley Auth.*, 2007 WL 977172, at *2 (E.D. Tenn. Mar. 23, 2007) and *Accurate Controls, Inc. v. Cerro Gordo County Bd. of Supervisors*, 2009 WL 427374, at *4 (N.D. Iowa 2009))).  However, in both cases, the district court concluded that the bid documents were not relevant to the claims in each case. *A&G Tree*, 2007 WL 977172, at *2 (noting that, in light of counterclaims of overbilling during contract performance, the bid "documents are irrelevant to any defenses or claims that the defendant asserts in this dispute"); *Accurate Controls*, 2009 WL 427374, at *4 (concluding that the bid information "would not be relevant to any issue in this case, nor would it lead to the discovery of admissible evidence").

Here, Corinthian's requests for equitable adjustment underlying its claim make its bid information relevant.  The information is also proportional because it directly relates to Corinthian's arguments.[3]  For REA No. 4's differing site condition portion of the claim, Corinthian seeks an equitable adjustment because Corinthian alleges that it discovered that an existing water line differed from the as-built drawings provided by the

---

[3] Corinthian argues that the Navy's refusal to produce the proposals of the other offerors in the procurement amounts to a concession that this information is not relevant (Corinthian opp'n at 16).  However, as noted above, we disagree because we find there is a basis for discovery of Corinthian's bid information.

5

Navy in the Solicitation (compl. ¶¶ 44-52, ex. C; R4, tab 21 at 359-62). And, as noted above, Corinthian stated that it relied on the Navy's mistaken drawings when preparing its bid (R4, tab 21 at 362).

In such claims for differing site conditions, typically a contractor must show that it reasonably relied on the contract documents in preparing its bid. *Stuyvesant Dredging Co. v. United States*, 834 F.2d 1576, 1581 (Fed. Cir. 1987) ("The contractor also must show that it reasonably relied upon its interpretation of the contract and contract-related documents and that it was damaged as a result of the material variation between the expected and the encountered conditions."); *ECC Int'l LLC*, ASBCA Nos. 61176, 62029, 2021 WL 1382834 ("To receive an equitable adjustment to the Contract, ECCI must demonstrate that it reasonably relied upon its interpretation of the Contract."); *Renda Marine, Inc. v. United States*, 66 Fed. Cl. 639, 655 (2005) ("[A] contractor must prove that, when interpreting the bid data . . . it [not only] examined the contract documents and reasonably interpreted them, but [also] . . . that it relied on its interpretation when calculating its bid.") (internal quotation and citation omitted), *aff'd*, 509 F.3d 1372 (Fed. Cir. 2007). Thus, Corinthian's bid information is relevant to its differing site conditions claim.

Corinthian's REA No. 3 based on the Changes clause also makes its bid information relevant. For REA No. 3, Corinthian states that it based its project plan on purchasing nutrient credits from the Virginia Department of Environmental Quality to comply with Virginia storm water regulations, but that the Navy changed its requirements disallowing Corinthian from pursuing that plan. (Compl., ex. B; R4, tab 19, at 334; *see also* compl. ¶ 38) "The general rule is that 'where a contractor seeks recovery based on his interpretation of an ambiguous contract, he must show that he relied on this interpretation in submitting his bid.'" *Fruin-Colnon Corp. v. United States*, 912 F.2d 1426, 1430 (Fed. Cir. 1990) (quoting *Lear Siegler Mgmt. Servs. Corp. v. United States*, 867 F.2d 600, 603 (Fed. Cir. 1989)); *Lasers Mfg., Inc.*, ASBCA No. 55436, 10-1 BCA ¶ 34,388 at 169,813 ("Even if we were to find that LMI's interpretation was within the zone of reasonableness, it could not prevail because it presented no evidence of how it interpreted these provisions during bidding."). It remains to be seen whether the Contract was ambiguous on this point. *See Moore & Cowart Contractors, Inc.*, ASBCA No. 54014, 04-1 BCA ¶ 32,557 at 161,032 ("A finding of prebid reliance is necessary only where the contract is ambiguous."). But, for now, the Navy seeks information that is "reasonably calculated to lead to discovery of admissible evidence" if there is ambiguity. *Afro-Lecon*, 820 F.2d at 1203. At this time and based on the REAs here, the Navy should have the opportunity to receive responsive discovery.[4]

---

[4] The Navy also argued that the Audit and Records clause of the Contract dictated Corinthian to produce its bid information, among other documents (Navy mot. at 4-5, 15-16). It does not. As pertinent to the Navy's argument, this clause permits the contracting officer or an authorized representative to audit a contractor

Ultimately, weighing both proportionality concerns and given the underlying issues in Corinthian's claim relating to the Changes and Differing Site Conditions clauses, the Board concludes that Corinthian must produce the bid information that it used to prepare the estimates in its proposal.

## CONCLUSION

For the foregoing reasons including the facts of this appeal, the Board grants the Navy's request for the bid information Corinthian relied upon in preparing its proposal.

Dated:  May 19, 2021

DANIEL S. HERZFELD
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

---

if the contract "is a cost-reimbursement, incentive, time-and-materials, labor-hour, or price redeterminable contract" (FAR 52.215-2(b)) or the agency "required the contractor to submit certified cost or pricing data in connection with any pricing action relating to this contract[.]"  FAR 52.215-2(c).  Here, the Contract was a fixed-price construction project, which means that 52.215-2(b) is inapplicable (R4, tab 2 at 153-56).  Nor has the Navy provided any evidence that Corinthian had to otherwise supply certified cost and pricing data, which means that 52.215-2(c) is inapplicable.  *See KEPA Servs, Inc. v. Dep't of Veterans Affairs*, CBCA No. 2727 *et al.*, 15-1 BCA ¶ 35,942 at 175,666 ("Because the audit provision of FAR 52.215-2(c) applies only if the contractor 'has been required to submit certified cost or pricing data, and because Kepa has not and, at least in the present circumstances of these appeals, will not have to submit certified cost or pricing data, the clause does not currently give the VA a contractual right to audit.");  *Aerospatiale Helicopter Corp.*, DOTBCA No. 1905 *et al.*, 89-1 BCA ¶ 21,559 at 108,579 (requiring appellant to submit to audit under predecessor audit clause because appellant "submitted cost and pricing data to the Coast Guard . . . triggering the obligations flowing from that submission").

I concur                                              I concur

RICHARD SHACKLEFORD                        J. REID PROUTY
Administrative Judge                              Administrative Judge
Acting Chairman                                    Vice Chairman
Armed Services Board                             Armed Services Board
of Contract Appeals                                of Contract Appeals


     I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 62379, Appeal of Corinthian-WBCM, a Joint Venture, rendered in conformance with the Board's Charter.

     Dated:  May 20, 2021


PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals